**UNITED STATES of America, Appellee,**

v.

**Charles P. HEWITT, Appellant.**

No. 90–5578.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1991.

Decided Aug. 22, 1991.

Rehearing Denied Oct. 1, 1991.

---

David A. Palmer, Sioux Falls, S.D., for appellant.

Philip N. Hogen, argued (Thomas J. Wright, on brief), Sioux Falls, S.D., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Charles P. Hewitt (defendant) appeals his seventy-month sentence imposed by the district court. We reverse and remand.

## I. FACTS

Defendant, Edmund Arndt, Kathleen Hofer and Duane White were all arrested on July 20, 1990. Law enforcement officials used a confidential informant in their investigation and the ensuing arrests. The informant advised officers that cocaine had been purchased from White on several oc-

casions in the past. White was employed by Arndt at an auto shop. The informant contacted White on July 20, 1990 and learned that a shipment of cocaine was expected that evening. The police then obtained and executed a search warrant at White's residence.

White elected to cooperate with the police and told the police that defendant would be arriving with cocaine at the Sioux Falls airport that evening. The officers escorted White to the airport. White had previously met defendant and was able to point him out to the police. The police searched defendant and found 170 grams of cocaine in his boots. Defendant was then interviewed by the police and he admitted to having made two previous trips to Sioux Falls for the purpose of delivering cocaine. Defendant stated that one such trip took place in March or April 1990 and the other trip occurred on June 1, 1990. Defendant admitted that on each of these trips, 112 grams of cocaine were involved.

Defendant was charged along with the three others in a tencount indictment in which defendant was charged with three counts of interstate travel or transportation in aiding of racketeering (18 U.S.C. §§ 2 and 152); three counts of distribution and possession with intent to distribute controlled substances (21 U.S.C. §§ 841(a) and 841(b)(1)(B); and one count of conspiracy (21 U.S.C. § 846). Defendant entered into a written plea agreement with the government in which defendant entered a guilty plea to Count VI of the indictment (distribution and possession with intent to distribute 170 grams of cocaine on July 20, 1990) and also agreed to fully cooperate with the government. Among other things, the government agreed that unless evidence was disclosed to establish otherwise, defendant was involved with 394[1]

grams of cocaine as alleged in the indictment.

The district court ordered a presentence investigation (PSI) to be conducted. During the investigation, the probation officer interviewed Detectives Jensen and Plucker, the two officers who had escorted White to the airport to identify defendant. Detective Jensen recalled that, while en route to the airport, White stated that defendant had made six to eight (or six to ten)[2] prior trips to Sioux Falls for the purpose of distributing cocaine. Detective Plucker did not recall that White had made this statement, even though Plucker, Jensen and White were all traveling in the same car at the time the conversation allegedly took place. Furthermore, this conversation was not included in the police report and so the prosecuting attorney did not know about these additional Sioux Falls trips until after the probation officer had begun his investigation for the PSI. And so, it appears that the prosecutor was unaware of this information at the time the plea agreement was drawn up and signed.

The government contends that the Jensen/White conversation did indeed take place and that Detective Plucker was talking on the police radio and simply did not hear White make the statement. In its brief, the government also contends that Jensen thought Plucker had heard the conversation and therefore, Jensen did not think that it needed to be included in the report. In any event, these additional trips to Sioux Falls were used by both the probation office and the district court in calculating the amount of cocaine attributable to the defendant.

In addition to the 170 grams of cocaine found in defendant's boots at the airport and the cocaine linked to the additional Sioux Falls trips, the district court also considered evidence of two trips to Aber-

---

**1..**

| | |
|---|---|
| July 20, 1990 trip | 170 grams |
| March/April 1990 trip | 112 grams |
| June 1, 1990 trip | 112 grams |

TOTAL: 394 grams

**2.** At sentencing, Detective Jensen testified that White told him that defendant had made *six to ten* prior trips to Sioux Falls. However, also at sentencing, the probation officer testified that Detective Jensen told him that White stated that defendant had made *six to eight* prior trips to Sioux Falls.

deen, South Dakota made by defendant for the purpose of distributing cocaine. This information was discovered after the plea agreement was made, while officers were debriefing codefendant Arndt. Arndt stated that he had met defendant twice in Aberdeen, in the summer months of 1989. On each occasion, Arndt contended that defendant provided him with one and one-half ounces of cocaine for a total of three ounces (85 grams). Later, when the probation officer asked defendant about the Aberdeen trips, defendant did recall that he had made one such trip to Aberdeen to meet Arndt and supply him with cocaine.

At sentencing, the probation officer recommended in the PSI that 708 grams of cocaine be attributed to defendant. This amount included:

170 grams — amount found in defendant's boots at the airport on July 20, 1990.
453 grams — four trips to Sioux Falls with 112 grams per trip.
85 grams — two trips to Aberdeen with approximately 42 grams per trip.

---

708 grams — TOTAL

However, the district court made a different finding based on its own review of the evidence. The district court imputed defendant with 884 grams of cocaine. This amount included:

170 grams — amount found in defendant's boots at the airport on July 20, 1990.
672 grams — six trips to Sioux Falls with 112 grams per trip.
42 grams — one trip to Aberdeen with 42 grams.

---

884 grams — TOTAL

Pursuant to the Guidelines, defendant's offense level was set at 26, but then reduced to 24 after the court found that defendant was entitled to a two-point decrease for acceptance of responsibility. The court also determined defendant's criminal history category to be level III (in accordance with the recommendation of the PSI). The appropriate sentencing range for this combination is 63 to 78 months. The district court sentenced defendant to 70 months to be followed by three years supervised release.

Defendant has timely appealed his sentence. Defendant argues that the district court incorrectly calculated the quantity of cocaine attributable to him and also that the district court improperly assessed his criminal history category.

## II. DISCUSSION

We first address the issue of the quantity of cocaine attributable to the defendant. As discussed above, the plea agreement set the quantity of cocaine at 394 grams. However, during sentencing, the district court found that additional cocaine was involved. In particular, the district court found that defendant had made six prior trips to Sioux Falls to deliver cocaine and that 112 grams of cocaine were involved on each trip. Furthermore, the district court included one of the Aberdeen trips in its calculation, finding that 42 grams were involved on that trip. These figures, when added to the 170 grams found in defendant's boots at the airport, total 884 grams.

■ Defendant objects to the use of the 42 grams of cocaine from the Aberdeen trip because of the way the information was obtained. Defendant argues that his own guilty plea "forced" Arndt to plead guilty and that now the government is using Arndt's statements against defendant. Therefore, defendant contends that the government is using "indirect information gained by Defendant's cooperation against [defendant]." Appellant's brief, p. 16. This may be the case, but there is nothing improper about using a co-defendant's statements against a defendant who has pled guilty.

Arndt was the first to disclose the Aberdeen trips. The fact that defendant later admitted to one of the Aberdeen trips has no bearing on the propriety of including 42 grams of cocaine in the amount attributable to defendant. In support of his theory that statements by co-defendant Arndt cannot be used against defendant, defendant cites two cases: *United States v. Stevens*, 918 F.2d 1383 (8th Cir.1990), and *United States v. Shorteeth*, 887 F.2d 253 (10th

Cir.1989). We have carefully reviewed both cases and conclude that, under the present facts, nothing in either case prevents a sentencing court from using statements made by a co-defendant in determining the amount of drugs attributable to a defendant. In particular, we note that neither case even involved statements made by a co-defendant.[3]

Therefore, we find no merit in the argument that defendant's guilty plea "forced" co-defendant Arndt to plead guilty and therefore, none of Arndt's statements can be used against defendant. In fact, we note that previous decisions have held that the practice of using a co-defendant's statements against a defendant is accepted. *See United States v. Boyd*, 901 F.2d 842 (10th Cir.1990) ("The information provided by [the co-defendant] needed no confirmation by the defendant in order for the court to consider it in imposing sentence." *Id.* at 845); *United States v. Davis*, 912 F.2d 1210 (10th Cir.1990) ("The plea agreement was not violated by the use of statements of [defendant's] co-defendants." *Id.* at 1213). Thus, the trial court's inclusion of 42 grams from one Aberdeen trip in its calculation of the amount of cocaine attributable to defendant was not clearly erroneous. *United States v. Ehret*, 885 F.2d 441, 444–45 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

▇ Defendant also contends that it was improper for the district court to use the additional trips to Sioux Falls (to which White referred during the trip to the airport with Detectives Plucker and Jensen) in calculating the total amount of cocaine attributable to defendant. We agree. The information that White allegedly relayed to Detective Jensen regarding defendant's additional trips to Sioux Falls "did not clearly establish either the dates on which these deliveries were made or the amounts of cocaine delivered...." *United States v. Phillippi*, 911 F.2d 149, 151 (8th Cir.1990),[4] *cert. denied*, —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991).

In fact, the probation officer testified that Detective Jensen's representation of White's statement made on the way to the airport was the *only* basis on which the probation officer made his conclusion that defendant had made six to eight prior trips to Sioux Falls. (Tr. at 13) According to Jensen's testimony at the sentencing hearing, White merely stated that defendant had been to Sioux Falls on six to ten prior occasions for the purpose of delivering drugs. Detective Jensen admitted that White did not mention the quantity of cocaine brought by defendant on these trips nor was there any talk of the dates on which this conduct occurred. (Tr. at 47–50) Rather, the government took the defendant's statements regarding the two trips he made to Sioux Falls where he admitted to bringing 112 grams per trip and then assumed that this was the amount of cocaine defendant brought on each of the trips to which White referred.

We find this assumption to be far reaching. First of all, White's statement to Detectives Jensen and Plucker regarding defendant's prior Sioux Falls trips was not included in the police report. Detective Jensen testified that he did not include the incident in the police report because he was sure that Plucker had heard the conversation. Detective Plucker testified that he did not even hear White make the statement. We do not understand why such an important statement as the statement allegedly made by White was not included in the police report, but in any event, the fact remains that White's statement, as told to and relayed by Detective Jensen, does not

---

**3.** *United States v. Stevens*, 918 F.2d 1383, 1386–87 (8th Cir.1990), involved a defendant's statements used against him, in violation of the plea agreement. The court determined that the plea agreement prohibited further criminal charges but allowed the court or the probation officer to consider the information at any time. In *United States v. Shorteeth*, 887 F.2d 253, 256–57 (10th Cir.1989), the court held that once a defendant secures protection under a plea agreement, later statements to law enforcement officers by that defendant cannot be used against him.

**4.** In *United States v. Phillippi*, 911 F.2d 149 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991), this error was found to be harmless because the base offense level remained the same, even after the improperly included amount was omitted. *Id.* at 151.

meet the *Phillippi* specificity requirements.

■ Furthermore, we point out the "No Further Prosecution" clause contained in paragraph 5 of the plea agreement which provides:

> The United States agrees that there will be no further federal criminal prosecution of the defendant in the District of South Dakota based on the information and evidence now available to the United States regarding the defendant's involvement with acquisition and distribution of controlled substances.

Assuming that the conversation between Detective Jensen and White did take place as Detective Jensen contends, this conversation would have occurred on July 20, 1990. Since the plea agreement was signed on September 10, 1990, it appears that the government (via Detective Jensen) had information regarding the extra trips to Sioux Falls at the time the plea agreement was signed.

Because the government (if not the prosecuting attorney) knew about these additional trips and additional cocaine before the plea agreement was signed, we hold that the "No Further Prosecution" clause strengthens defendant's argument against the inclusion of the 448 grams of cocaine (four trips at 112 grams per trip) in the amount of cocaine attributable to defendant. This information was available to the government on July 20, 1990. We hold that the government should not be able to use the information *at this time* to punish defendant for these additional amounts which were known to the government at the time the plea agreement was signed.

We hold that the district court should have included only the following amounts in its calculation of the amount of cocaine attributable to defendant:

170 grams — the amount found in defendant's boots at the airport on July 20, 1990.

42 grams — the amount from one trip to Aberdeen.

224 grams — the amount from two trips to Sioux Falls (March/April 1990 and June 1990) to which defendant admitted to making.

------------------------------------------------------------------------

436 grams — TOTAL

Therefore, the district court is instructed to resentence defendant, using 436 grams as the amount of cocaine attributable to defendant.

■ Next, we address defendant's criminal history category. Defendant contends that the district court improperly included two specific incidents in its computation of his criminal history category. First, defendant argues that a May 2, 1989 misdemeanor conviction for possession of less than 35 grams of marijuana should not have been included because the information was obtained solely through defendant's own statements. Defendant argues that the probation officer would not have discovered this prior conviction but for the fact that defendant told him about it after the plea agreement had already been made. Therefore, defendant claims that information obtained solely through his cooperation is now being used against him in the computation of his criminal history category and that this is prohibited by the plea agreement.

Section 1B1.8 [5] of the Guidelines addresses this issue as follows:

> (a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not

---

**5.** At the time defendant was sentenced, § 1B1.8 contained the language regarding the use of self-incriminating information as used in the determination of criminal history category only in an Application Note, rather than in the actual body of the guideline as it is in the current version of that section. The prior version of Application Note 2 provided that "[t]he Commission does not intend this guideline to interfere with deter-mining adjustments under Chapter Four, Part A (Criminal History)...." Similarly, the current version of Application Note 2 provides that "Subsection (b)(2) prohibits any cooperation agreement from restricting the use of information as to the existence of prior convictions and sentences in determining adjustments under § 4A1.1 (Criminal History Category)...."

be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

(b) The provisions of subsection (a) *shall not be applied to restrict the use of information:*

\* \* \* \* \* \*

(2) *concerning the existence of prior convictions and sentences in determining § 4A1.1 (Criminal History Category)....*

(emphasis added).

Section 1B1.8 of the Guidelines permits the court to use information obtained, post-plea, from defendant, in the calculation of the criminal history category. Therefore, we find that the district court properly included the May 2, 1989 conviction for possession of marijuana in its computation of defendant's criminal history category.

Defendant also objects to the district court's use of a June 11, 1990 conviction of operating a motor vehicle under the influence of alcohol (OUI) in its criminal history determination. Defendant contends that even though he waived his right to counsel and pled guilty, that the conviction should not be used because it may be constitutionally invalid under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Boykin* required that the record show that a defendant who pleads guilty do so understandingly and voluntarily.

■ This court has addressed the *Boykin* requirements on several occasions. Recently, in *United States v. Dickens,* 879 F.2d 410 (8th Cir.1989), we held that where there was no transcript of defendant's guilty plea hearing for writing a bad check, that evidence of custom and practice of trial attorneys and judges could be used to refute defendant's claim that his guilty plea was unknowing and involuntary. *Id.* at 412. In the instant case, however, there is no such evidence, only a docket sheet which establishes that defendant pleaded guilty, and the probation officer's testimony that when defendant was asked if he knew he was entitled to counsel and if he

knew that he had waived his right to counsel, that defendant answered affirmatively.

However, since the time we decided *Dickens,* the wording of Application Note 6 of § 4A1.2 of the Guidelines has been changed to address defendant's particular situation. At the time *Dickens* was decided, Note 6 read, in pertinent part: "Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." Now, the same Note 6 reads: "[S]entences resulting from convictions that a defendant shows *to have been previously ruled constitutionally invalid* are not to be counted." (emphasis added). This amendment was effective November 1, 1990. Defendant was sentenced on November 26 and 27, 1990.

We find that Note 6 adequately addresses defendant's argument concerning his OUI conviction as it relates to the criminal history category. Note 6 authorizes the inclusion of the OUI because defendant has made no showing that the OUI conviction was "previously ruled constitutionally invalid." Therefore, the district court properly counted the OUI in its calculation of defendant's criminal history category.

## III. CONCLUSION

For the reasons stated above, we remand the case to the district court for resentencing consistent with this opinion.