**UNITED STATES of America, Appellee,**

v.

**Alonzo DAY, Appellant.**

**No. 91–1499.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1991.

Decided Nov. 21, 1991.

---

Lee Lawless, St. Louis, Mo., for appellant.

Richard Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

BOWMAN, Circuit Judge.

Alonzo Day appeals his conviction of one count of illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Supp. V 1987), and his enhanced sentence under 18 U.S.C. § 924(e)(1) (Supp. V 1987). Day presents three issues for our review. First, he contends that critical evidence should have been suppressed because the search warrant by which it was seized contained false statements. He also claims the prosecution employed racially-motivated voir dire tactics prohibited by the fourteenth amendment's equal protection clause. Finally, Day argues his sentence was wrongly enhanced by the use of prior convictions founded on invalid guilty pleas. We affirm Day's conviction, but we remand for resentencing.

## I.

On the evening of February 16, 1988, St. Louis Police Detective Charles Poiner applied to a Missouri judge for permission to search a local apartment from which Poiner suspected that defendant and others were selling cocaine and marijuana. The detective's supporting affidavit stated that on the preceding day Poiner had been told by a reliable informant that the informant had been in the apartment on several occasions to purchase cocaine. The informant also told Poiner that other persons sold drugs from the apartment when Day was not there and described the procedures used to make these sales.

Poiner also swore that he and other police officials corroborated the tip by surveillance conducted "during the daylight and evening hours" of that week, through and including February 16. Poiner stated that these observations corroborated the informant's description of drug trafficking at the apartment in question and revealed "an extraordinary amount" of coming and going at the location by persons the officers knew were active users of controlled substances. The warrant was issued on the evening of the 16th.

Armed with the warrant, the police searched the apartment during the early evening of February 19, 1988. They found Day in the apartment with a bag containing what appeared to be marijuana and another bag containing a firearm, a white powdery substance, and cash in the amount of $3500. Another firearm, a .38 caliber revolver, was taken from Day's person.

Day was indicted on two counts of illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Supp. V 1987). A jury convicted him on one count and acquitted him on the other. Because Day had previous felony convictions that met the sentence-enhancement requirements of 18 U.S.C. § 924(e)(1) (Supp. V 1987), the District Court[1] sentenced him to a prison term of fifteen years and a three-year period of supervised release.

## II.

■ Prior to trial, Day moved to suppress the evidence seized during the search

---

[1]. The Honorable Edward L. Filippine, Chief United States District Judge for the Eastern District of Missouri.

of the apartment, basing his argument on *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which requires that when a defendant makes a "substantial preliminary showing" that a falsehood was recklessly or intentionally used to establish probable cause, a hearing must be held to determine the warrant's validity. *Id.* at 155–56, 98 S.Ct. at 2676–77. At this hearing the defendant bears the burden of proving, by a preponderance of the evidence, that his preliminary contention is correct and that "with the ... false material set to one side, the affidavit's remaining content is insufficient to establish probable cause" for the search. *Id.* at 156, 98 S.Ct. at 2676.

Although the informant provided crucial intelligence of drug trafficking, only Poiner's account of police surveillance put the relevant events close in time to the search warrant application. Day contended that Poiner's statements should be stricken under *Franks,* and argued that without the detective's alleged falsehoods the affidavit did not provide probable cause to believe drugs were still being sold from the apartment when the warrant was issued. *See United States v. Dennis,* 625 F.2d 782, 792 (8th Cir.1980) (stating "[p]robable cause must exist at the time the warrant is issued. If past circumstances would have justified the search, there must be reason to believe that those circumstances still exist at the time of the search." (citation omitted)). Day claimed the firearms should have been excluded from evidence just "as if probable cause was lacking on the face of the affidavit." *Franks,* 438 U.S. at 156, 98 S.Ct. at 26.[2]

■ Day's motion was referred to a magistrate[3] who, after an evidentiary hearing, found that it should be denied; the District Court adopted this finding. In reviewing these determinations we may not conduct a de novo inquiry into whether probable cause existed to issue the warrant. *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 2085, 80 L.Ed.2d

721 (1984); *United States v. Wajda,* 810 F.2d 754, 760 (8th Cir.), *cert. denied,* 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). The District Court's findings of fact may be overturned only upon a demonstration of clear error. *United States v. Malbrough,* 922 F.2d 458, 462 (8th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991); *United States v. Lueth,* 807 F.2d 719, 724–25 (8th Cir.1986). "Although absent clear error we are bound by the district court's findings ... we may reverse if that court's ultimate ruling on suppression reflects an erroneous view of the applicable law." *United States v. Reivich,* 793 F.2d 957, 961 (8th Cir.1986). Under that law, our duty is merely to "ensure that the magistrate had a 'substantial basis'" for concluding the affidavit revealed "a fair probability that contraband or evidence" would be found at the location of the proposed search. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds, United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). In reviewing the sufficiency of an affidavit supporting a search warrant, we accord great deference to the decision of the judicial officer who issued the warrant. *United States v. Curry,* 911 F.2d 72, 75 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).

■ Here, Poiner's affidavit stated that he and other police officials observed the apartment during the daylight and evening hours of February 15 and 16. Day challenged the truthfulness of these statements with testimony Poiner had given in a related Missouri proceeding; Day claimed that alleged contradictions between this testimony and the affidavit regarding daylight and evening surveillance demanded the conclusion that no surveillance took place. This claim, however, is based not on

---

**2.** Day also argued the seizure exceeded the warrant's scope. He has not made this claim here, and we do not address it.

**3.** The Honorable Carol E. Jackson, United States Magistrate Judge for the Eastern District of Missouri.

real contradictions but on ambiguities in Poiner's testimony. For example, Poiner's affirmative response when asked if his surveillance was "done at or near" 6:00 p.m. on February 15 and 16 is unclear whether, as Day claims, all surveillance was supposedly completed by 6:00 p.m., or whether surveillance began before 6:00 and ended sometime thereafter. The District Court found surveillance had at least occurred on the evening of February 15 and our review has not left us " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City, N.C.* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

■ The magistrate declined to evaluate Poiner's veracity further and merely assumed, *arguendo,* that the remaining statements challenged by Day should be removed from a consideration of probable cause. Upon examining its own redaction of Poiner's affidavit, the court found that even as so redacted the affidavit was sufficient to support the warrant. The affidavit showed that the tip came from an informant who had been found reliable in the past and who personally had observed drug transactions in the apartment. This information was corroborated by Poiner's surveillance of the apartment, which was done close in time to the search warrant application. It is well-settled that information about criminal activity at an earlier, unspecified time may combine with factually connected, recent, time-specific information to provide a substantial basis for the conclusion that the criminal activity described in an affidavit is sufficiently close in time to the search warrant application. *United States v. Bridges,* 419 F.2d 963, 965–66 (8th Cir.1969); *United States v. Freeman,* 532 F.2d 1098, 1100 (7th Cir.1976) (per curiam); *United States v. Holliday,* 474 F.2d 320, 322 (10th Cir.1973). The affidavit thus provided a substantial basis for the issuing judge's decision to issue the warrant; the

District Court did not err in denying Day's motion to suppress.

### III.

Day next argues the District Court erred in denying his motion for a mistrial on the ground the government had deliberately excluded blacks from the jury in violation of the rule in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* claims must undergo a three-step evaluation:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (citations omitted). A simple showing that the government used most or all of its peremptory challenges against a cognizable minority group cannot establish a *Batson* violation: " 'Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' " *Id.* 111 S.Ct. at 1866 (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 562–63, 50 L.Ed.2d 450 (1977)). By the same token, "the striking of a single ... juror for racial reasons violates the equal protection clause, even though other ... jurors [of the same cognizable group] are seated, and even when there are valid reasons for the striking of some [of the group's] jurors." *United States v. Battle,* 836 F.2d 1084, 1086 (8th Cir.1987).

■ It follows that a *Batson* claim's success will depend upon the credibility of the government's reasons for using its peremptory challenges. *Hernandez,* 111 S.Ct. at 1869.[4] A satisfactory explanation must be

---

**4.** Indeed, although we do not advocate departure from the normal course of a *Batson* proceeding, the government's explanation of its peremptory challenges may obviate the necessity of

"based on something other than the race of the juror," *Id.* at 1866, and a sheer denial of discriminatory purpose is insufficient to rebut a *Batson* claim. *United States v. Wilson,* 884 F.2d 1121, 1124 (8th Cir.1989) (en banc). Because the inquiry focuses on the government's intent "[t]here will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.... [The] evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " *Hernandez,* 111 S.Ct. at 1869 (quoting *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985)). Consequently, the trial court's rulings on *Batson* claims "are entitled to considerable deference" and may be overruled only upon a showing of clear error. *United States v. Jackson,* 914 F.2d 1050, 1052 (8th Cir.1990).

The venire in the present case contained twenty-eight persons of whom eight were black. The government exercised four of its peremptory challenges against black venirepersons, leaving four blacks to sit on the jury that tried Day. We note initially that Day did little to show the existence of a prima facie *Batson* case aside from pointing out that the government struck more blacks from the panel than whites. Numerical analyses such as this are, standing alone, incapable of establishing a prima facie case. To illustrate the difficulty, we note that despite the government's peremptory challenges the proportion of blacks on Day's petit jury was greater than the proportion of blacks in the venire. The ambiguity which results from these figures demonstrates that "numbers alone are not sufficient to establish or negate a prima facie case." *United States v. Dawn,* 897 F.2d 1444, 1448 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990). If on these facts the District Court

had found no prima facie case, we would be hardpressed to say that this was error.

■■■ The District Court, however, expressly declined to state whether Day had made out a prima facie *Batson* case and instead asked the government to explain its challenges as to two of the black venirepersons who were eliminated. The court evidently was satisfied, based on the voir dire, that the other two strikes were prompted by racially-neutral reasons. Having examined the transcript of the voir dire, we are similarly satisfied. Of the two venirepersons with respect to whom the government was not asked to explain its challenges, one had previously served on a jury that had failed to reach a verdict and had personal knowledge of the crime scene in the present case; the other's nephew had faced criminal charges and this venireperson believed that both the disposition of that case and the police officers' testimony had been unfair. As to the two peremptory challenges the government was asked to explain, one venireperson was struck because he worked at a hotel whose occupants and employees had been the focus of numerous criminal investigations; the government confirmed this information with a police officer who was present during voir dire. The other was eliminated because she was young, had a sporadic employment history as a teacher, and did not own property. The prosecutor explained that these characteristics did not give her the type of community attachment the government sought to have on this jury. We note that such reasoning has been considered sufficient to constitute a race-neutral motive for striking a venireperson. *See, e.g., Jackson,* 914 F.2d at 1052–53 (holding explanation that government sought "jurors with some experience and a commitment to the community" was a race-neutral explanation for challenging a young, separated venireperson without a stable employment history).

determining whether the defendant has made a prima facie *Batson* showing. *See Hernandez,* 111 S.Ct. at 1866 ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question ... the preliminary issue of ... a prima facie showing becomes moot.");

see also *United States v. Dawn,* 897 F.2d 1444, 1449 n. 5 (8th Cir.), (noting that explanations about peremptory challenges without prior establishment of a prima facie case "is not required by *Batson* and may not even be appropriate in all circumstances"), *cert. denied,* —— U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990).

In light of these race-neutral reasons, and in the absence of any evidence showing that these reasons were pretextual, the District Court's conclusion that Day had not carried his burden of showing purposeful racial discrimination was not clearly erroneous.[5]

## IV.

Section 924(e)(1) demands the imposition of a minimum fifteen-year sentence if a defendant, found guilty of illegally possessing a firearm while being a convicted felon, has at least three previous convictions for violent felonies. 18 U.S.C. § 924(e)(1) (Supp. V 1987). Day received this enhanced sentence on the basis of four previous convictions, among which are three convictions resulting from guilty pleas in the State of California: a 1979 conviction for battery, a 1980 conviction for assault with a deadly weapon, and a 1982 conviction for assault. Day claims his guilty pleas in the California courts were accepted without prior hearings to determine his competency, and therefore are constitutionally infirm. Consequently, Day contends the District Court erred in using these convictions to impose the enhanced sentence.

Before we can address this argument, however, we must determine whether Day's collateral attacks on the California convictions run afoul of an amendment to the Sentencing Guidelines. When the jury returned its verdict on March 20, 1990, the guideline governing the computation of a defendant's criminal history score was followed by an application note that stated, "Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." U.S.S.G. § 4A1.2, comment. (n. 6) (Nov. 1989). Before Day's sentence was imposed on March 1, 1991, the United States Sentencing Commission amended this language to exclude "convictions that a defendant shows to have been *previously ruled* constitutionally invalid." U.S.S.G. § 4A1.2, comment. (n. 6) (Nov. 1990) (emphasis supplied). This Court has already determined that the emphasized change forbids collateral attacks on prior convictions used to compute a defendant's criminal history score under the Guidelines. *United States v. Hewitt,* 942 F.2d 1270, 1276 (8th Cir. 1991); *and cf.* U.S.S.G. § 4A1.2, comment. (backg'd.) ("The Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction.").[6] Such amendments ordinarily apply to Guidelines sentencing proceedings conducted after their effective date. *United States v. Dortch,* 923 F.2d 629, 632 n. 2 (8th Cir.1991). However, we do not believe Day is prohibited from attacking the convictions underlying his section 924(e)(1) sentence.

While the imposition of a sentence greater than Section 924(e)'s mini-

---

**5.** Day notes that this Court has been "mindful of the continuing problem with regard to the elimination of black jurors in the Eastern District of Missouri," Brief for Appellant at 18, and calls our attention to several previous cases that discuss our concern in this area. It remains true, however, that a *Batson* violation cannot be found in the absence of evidence to show racially-exclusionary practices in the particular case. As the Supreme Court has stated, "[w]e have no reason to believe that prosecutors will not fulfill their duty to exercise their challenges only for legitimate purposes. Certainly, this Court may assume that trial judges ... will be alert to identify a ... case of purposeful discrimination." *Batson,* 476 U.S. at 99 n. 22, 106 S.Ct. at 1724 n. 22.

**6.** Other courts have noted this amendment, but did not have the opportunity to explore its meaning. *See United States v. LaFrombois,* 943 F.2d 914, 915 n. 2 (8th Cir.1991) ("The parties have not addressed, and we do not consider whether defendants may continue to collaterally attack prior convictions under this November 1990 amendment to Application Note 6 of § 4A1.2.") (per curiam); *United States v. Guthrie,* 931 F.2d 564, 570 n. 4 (9th Cir.1991) (holding that change was "immaterial" since defendant was sentenced under the previous version of the Guidelines); *United States v. Mims,* 928 F.2d 310, 312 n. 1 (9th Cir.1991) (refusing to consider effect of amendment since defendant was "entitled" to the Guidelines in effect when he was sentenced); *United States v. Arigbodi,* 924 F.2d 462, 463–64 (2d Cir.1991) (noting possible application of amended language but declining to address the issue since defendant did not argue it before the district court, and affirming because plain error was avoided by the fact that the Guidelines would have prescribed the same sentencing range even if the challenged convictions had been excluded).

mum sentence is governed by the Guidelines, *see, e.g., United States v. Carey*, 898 F.2d 642, 645 (8th Cir.1990); *United States v. Wolak*, 923 F.2d 1193, 1200 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991); *United States v. Briggman*, 931 F.2d 705, 710 (11th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991), the imposition of the minimum sentence itself is governed by an independent statutory arrangement. *See Carey*, 898 F.2d at 645; (noting Guidelines defer to congressionally-specified penalties); *United States v. Moreno*, 933 F.2d 362, 374–75 (6th Cir.1991) (holding Guidelines do not govern age of previous convictions capable of enhancing a section 924(e) sentence), *cert. denied*, —— U.S. ——, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991); U.S.S.G. § 5G1.1(a) (Nov.1990) (providing that statutorily-required maximum or minimum sentence for single count of conviction controls over Guideline sentence). This arrangement includes a defendant's opportunity to demonstrate that one or more of the felonies proposed as a basis for his receipt of an enhanced sentence are incapable of that purpose: The circuit courts have consistently interpreted section 924(e) to permit collateral challenges such as Day's. *United States v. Traxel*, 914 F.2d 119, 121, 123–24 (8th Cir.1990); *United States v. White*, 890 F.2d 1033, 1035 (8th Cir.1989); *United States v. Merritt*, 882 F.2d 916, 918 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990); *United States v. Ferguson*, 935 F.2d 862, 886 (7th Cir.1991). We therefore turn to the merits.[7]

■ An incompetent defendant may not make a valid guilty plea, which is a voluntary, knowing, and intelligent waiver of certain rights that "is itself a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). Guilty pleas by incompetent defendants are therefore constitutionally unsound and cannot justify an enhanced sentence. *See United States v. Tucker*, 404 U.S. 443, 448–49, 92 S.Ct. 589, 592–93, 30 L.Ed.2d 592 (1972) *and Reeves v. Mabry*, 615 F.2d 489, 491 (8th Cir.1980) (both holding a conviction obtained in violation of a defendant's sixth amendment rights cannot be used for sentence enhancement purposes). A defendant is competent to plead guilty if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam).

■ In order to safeguard these principles the Supreme Court, in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), held that when there is a sufficient doubt about the defendant's competency a trial judge must, either on motion or *sua sponte*, conduct a hearing to determine whether the defendant is capable of proceeding.[8] *Drope*, 420 U.S. at 172, 95 S.Ct. at 904; *Pate*, 383 U.S. at 385, 86 S.Ct. at 842. A judge's failure to perform this duty violates the defendant's "due process right to a fair trial." *Drope*, 420 U.S. at 172, 95

7. Our decision that Day may attack the prior convictions underlying his section 924(e)(1) sentence makes it unnecessary for us to determine whether retroactive application of the amendment would collide with the federal Constitution's *ex post facto* prohibition. *Compare Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) (stating that change in law does not violate the prohibition if it does not alter "'substantial personal rights,'" but merely changes "'modes of procedure which do not affect matters of substance'") (quoting *Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)) (majority decision) *with Lindsey v. Washington*, 301 U.S. 397, 401–02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) (stating that although new mandatory sentence would not certainly result in defendants receiving a harsher sentence than under prior indeterminate sentencing scheme, the new penalty was *ex post facto* because it "deprived" them "of all opportunity to receive a sentence which would give them freedom from custody and control" sooner than allowed under new law) (unanimous opinion).

8. Although other terms have been used to describe the quantum of doubt required to trigger this duty, we employ the words "sufficient doubt" for the reasons set forth by Judge Heaney in *Griffin v. Lockhart*, 935 F.2d 926, 929 & n. 2 (8th Cir.1991).

S.Ct. at 904. In this context, a hearing requires the presence of the defendant and his counsel, the opportunity to be heard, to offer evidence, and to test the evidence. It also requires a ruling that is sufficiently explicit to permit meaningful review. *Cf. United States v. Luster*, 896 F.2d 1122, 1129 (8th Cir.1990) (discussing minimum due process requirements for sentencing hearing) (quoting *Specht v. Patterson*, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967).

■■■■■ The issue framed by *Pate* and *Drope* is not whether the defendant was competent to stand trial or plead guilty, but whether the absence of a hearing on the question of his competency amounted, in the circumstances of the case, to a denial of due process. *Drope*, 420 U.S. at 172, 95 S.Ct. at 904; *Pate*, 383 U.S. at 385, 86 S.Ct. at 842; *Griffin v. Lockhart*, 935 F.2d 926, 930 (8th Cir.1991).[9] Absent some contrary indication, state and federal trial judges are entitled to presume that defendants are competent. *Smith v. Armontrout*, 865 F.2d 1502, 1506 (8th Cir.1988) (en banc).[10] Therefore, a successful *Pate* challenge requires a showing that the trial judge failed to see the need for a competency hearing when, based on the facts and circumstances known to him at the time, he should have seen such a need. *Drope*, 420 U.S. at 174–75, 95 S.Ct. at 905–06; *Collins v. Housewright*, 664 F.2d 181, 183 n. 6 (8th Cir.1981) (per curiam), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1639, 71 L.Ed.2d 872 (1982). This Court's opinion in *Speedy v. Wyrick*, 702 F.2d 723 (8th Cir.1983), con-

tains a useful discussion about the evidence necessary for this showing:

> [an] evidentiary hearing [as to the defendant's competency] is constitutionally compelled at any time that there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. "Substantial evidence" is a term of art. "Evidence" encompasses all information properly before the court [that entered the conviction being challenged], whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is "substantial" if it raises a [sufficient] doubt about the defendant's competency to stand trial.

*Id.* at 725 (quoting *Lindhorst v. United States*, 658 F.2d 598, 607 (8th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309 (1982)) (brackets supplied). Although there are no facts which invariably create a sufficient doubt about a defendant's competency, attention should be paid to any evidence of his irrational behavior, his demeanor before the trial court, available medical evaluations, and whether trial counsel questioned the defendant's competency before the court. *Drope*, 420 U.S. at 180, 95 S.Ct. at 908; *Speedy v. Wyrick*, 748 F.2d 481, 486–87 (8th Cir. 1984), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2028, 85 L.Ed.2d 308 (1985).

■■■■ The defendant bears the burden of proving, by a preponderance of the evidence, that his prior convictions cannot be used for sentence enhancement. *White*,

---

**9.** The prudence of this distinction is apparent in the context of enhanced sentences. Such sentences frequently rely on well-aged convictions; for example, Day's prior convictions that are the predicates of his enhanced sentence are between nine and twelve years old. To require a sentencing court to decide whether a defendant was competent during proceedings that took place years earlier would be an exercise in futility. *Pate*, 383 U.S. at 387, 86 S.Ct. at 843; *Griffin*, 935 F.2d at 931. Instead, the somewhat easier task of the sentencing court is to decide whether the prior convictions relied upon for enhancement of sentence are invalid because adjudicated in circumstances that called for a competency hearing prior to such adjudication.

**10.** This presumption recognizes that most persons are competent. Cases in which a defendant must not be so regarded are departures from the usual course of criminal proceedings; some showing must be made that the circumstances of a particular case should have engaged the trial judge's attention before he or she can be faulted for failing to inquire as to the defendant's competency. *See Collins v. Housewright*, 664 F.2d 181, 183 n. 6 (8th Cir.1981) (per curiam) (quoting *Reese v. Wainwright*, 600 F.2d 1085, 1093 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979)) (stating one "cannot fault a trial judge for failing to determine a question that he has no reason to believe is in issue"), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1639, 71 L.Ed.2d 872 (1982).

890 F.2d at 1035; *United States v. Gallman*, 907 F.2d 639, 643 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991).[11] Because the sentencing court must weigh the evidence, and in some cases evaluate the credibility of witnesses, we may reverse only for clear error, *White*, 890 F.2d at 1035, which includes reliance on an "erroneous interpretation of applicable law." *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir.1991). Because here the District Court (aided and abetted by the parties) incorrectly interpreted the law that governs Day's challenges, we reverse and remand.

■ The record shows that both the parties and the District Court incorrectly perceived the issue as being whether Day was competent when he made the guilty pleas that resulted in his three California convictions. For example, the court rejected Day's challenge to his 1982 conviction because Day "ha[d] failed to produce and persuade the Court by a preponderance of the evidence that at the time he was incompetent." (Transcript of Jury Trial and Sentencing, pp. 347–48). The government characterized Day's showing as lacking "evidence that he was incompetent at the time of the commission of those acts or in the subsequent adjudication of his criminal responsibility." *Id.* at 304. Indeed, Day's brief contends that "the evidence presented to the [district] court established that these convictions resulted from pleas of guilty which were not knowingly and intelligently made due to defendant's lack of competence." Brief of Appellant at 19. Consequently, although some of Day's exhibits (such as presentence reports) were obviously before the California trial judges who took his guilty pleas, no effort was made in the District Court to determine whether his other evidence (including internal correspondence among correctional and mental health personnel) were before those California judges and, therefore, whether such evidence is relevant to determining if those judges should have, even in the absence of a motion by defendant's counsel, ordered a competency hearing. *Speedy*, 702 F.2d at 725 (stating that a *Pate/Drope* inquiry focuses solely on the facts known to the trial judge).

The District Court similarly erred in its treatment of Day's challenges to his 1979 and 1980 convictions. The District Court stressed that the judges in those cases knew Day had experienced mental health difficulties, and then relied on this fact to conclude that their acceptances of his guilty pleas constituted findings that Day was competent. This use of Day's guilty pleas recommends some observations about the role of *Boykin, supra*, which requires that evidence of the defendant's knowing and voluntary waiver of his right to a trial be "spread on the record" as a testament to the validity of his guilty plea. *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1711.

■ *Boykin*, and the various procedures designed to effect its holding, pertain to a defendant's competency insofar as they implicitly rely upon it for the exchange of information and consent necessary to show his possession of essential knowledge and his freedom from coercion. These exchanges, however, are not designed to distinguish between defendants who are competent and those who suffer from severe mental handicaps which belie their unexceptional participation in court proceedings. To be sure, the extent and quality of a defendant's participation is highly relevant in determining whether the trial court judge should have entertained a substantial doubt about his competency. *See Drope*, 420 U.S. at 179, 95 S.Ct. at 907 (stating a "defendant's demeanor during trial may ... obviate" the need for a competency inquiry). But a defendant's regular participation in a guilty plea hearing is

11. *White*, an appeal under Section 924(e)(1), may be misread to say the government must carry this burden. There, however, the defendant argued that the government should prove the validity of his prior convictions beyond a reasonable doubt. In rejecting this claim *White* interpreted *United States v. Dickens*, 879 F.2d 410 (8th Cir.1989), an appeal under the previous version of Application Note Six to Guideline § 4A1.2, as requiring the defendant to show by a preponderance of the evidence that his prior convictions are invalid. *White*, 890 F.2d at 1035–36.

not sufficient by itself to eliminate a substantial doubt about his competency where extrinsic evidence known to the judge who takes the plea raises such a doubt (or should raise such a doubt) in the mind of that judge. Nor can the acceptance of a defendant's guilty plea substitute for a competency hearing when one is required under the standards of *Pate* and *Drope*. The acceptances of Day's pleas were at most implicit decisions not to order a competency hearing; the task set for the District Court by *Pate* and *Drope* is to determine whether those decisions are supportable in light of the facts known to the judges who made them.

■ Day's misapplication of the relevant authorities barely satisfies the requirement that grounds for appeal be presented to the trial court and properly preserved for appellate review. *United States v. Ehret*, 885 F.2d 441, 445–46 (8th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *United States v. DePuew*, 889 F.2d 791, 794 (8th Cir.1989). Indeed, we would be inclined to affirm had the District Court ruled as it did because of the incorrect emphasis of Day's arguments or because of his failure to specify which extrinsic facts were known to the California judges and were, therefore, relevant to a *Pate* showing. Nonetheless Day cited *Pate* and *Drope;* the District Court, however, decided his challenge under an erroneous interpretation of those decisions. Because of this clear error, and because the inchoate record before us makes it impossible to say how the District Court would have resolved the relevant factual questions had it applied the proper legal and evidentiary standards, we must remand for resentencing. *United States v. Onwuemene*, 933 F.2d 650, 652 (8th Cir.1991); *United States v. Anderson*, 886 F.2d 215, 216–17 (8th Cir.1989).

## V.

Day's conviction is affirmed. We express no opinion whether his 1979, 1980, and 1982 convictions from the state of California may be used to enhance his sentence. Instead, we remand with instruc-
tions for the District Court to hold a hearing and determine, in conformity with our opinion, whether the record before the California judges who accepted the challenged guilty pleas should have raised a doubt about Day's competency sufficient to require those judges to hold a competency hearing sua sponte. If the District Court should determine that two or more of the California guilty pleas are invalid under that standard, the court is to resentence Day without the § 924(e)(1) enhancement.