**Wesley GRIFFIN, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 89–2844.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1990.

Decided May 29, 1991.

court order dismissing his habeas corpus petition. *See* 28 U.S.C. § 2254 (1988). Griffin asserts that because there was sufficient doubt about his mental competency to stand trial, the state trial court denied him due process by not holding an evidentiary hearing to resolve the question. We reverse and remand.

## I. BACKGROUND

Griffin was charged by information in June 1987 with interference with a law enforcement officer and criminal trespass (the latter charge was *nolle prossed* before trial). Before arraignment, Griffin filed a notice putting in issue his fitness to proceed and notifying the court of his intention to rely on the defense of mental disease or defect. Griffin also filed a motion requesting a court-ordered mental examination at the state hospital. The trial court held a hearing on Griffin's motion, during which the court expressed concern about the two- or three-month delay involved with an examination at the state hospital. At the conclusion of the hearing, the court ordered that Griffin undergo a preliminary examination at a regional mental health center and stated that "if there is an indication there that he should be sent for further testing, the Court will direct him." Trial Transcript and Documents vol. I, at 103.

The trial court's order required that the director of the mental health center provide a written report and findings in accord with Arkansas Statutes section 41–605(4) (now codified at Ark.Code Ann. § 5–2–305(d) (Supp.1989)). This report was to include a finding on Griffin's mental capacity at the time of the offense, a finding on his mental competency for trial, and a description of the nature of the mental health center's examination, "including but not limited to, the names of any tests, medications administered and total length of interviews by the examining physician." Trial Transcript and Documents vol. I, at 8–9.

Following the examination of Griffin, the director of the mental health center sent the following letter (excluding salutation and closing) in reply to the court's order:

Daniel D. Becker, Hot Springs, Ark., for appellant.

Joseph V. Svoboda, Little Rock, Ark., for appellee.

Before MAGILL and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Wesley Griffin was convicted in an Arkansas state court of interference with a law enforcement officer with the use of a firearm. He appeals from the district

Wesley Griffin was evaluated by James Vasilos, Ph.D. pursuant to court order on 07 14 87. His admitted use of alcohol and substances complicate the issue and make it difficult to answer the questions raised by the court. In staffing this case between myself [Neal Ritter, Ph.D.], James Vasilos, Ph.D., and Gene Watermann, M.D., we were unable to come up with a consensus in answering these questions. For that reason, we recommend a complete evaluation at Rogers Hall [state hospital].

If you have any questions, please feel free to contact me.

*Id.* at 10.

At arraignment on August 6, 1987, Griffin complained to the court that he was sick, "in extreme pain," and without his medication. *Id.* at 104–05. After the court explained to Griffin that the regional mental health center recommended a complete evaluation at the state hospital, Griffin responded, in part:

> They started me on medication and I took it a whole month and they just completely stopped giving it to me. And that caused me to be addicted to that medicine. It wrecks my nerves and everything, you know. So, rather than going through all this to find if I'm crazy —I'm not crazy. I'd rather just go ahead and be judged. . . .

*Id.* at 105. The court explained to Griffin that an examination at the state hospital would further delay his trial and that the question whether to withdraw his notice and motion regarding competency for trial was for him to decide after consultation with his attorney. Griffin responded:

> I'm just in so much depression. I just sent them a letter yesterday stating that if they don't try to get me to the hospital or something, you know, to try to get me some kind of medical treatment, I'm going to go ahead and hang myself off in that cell, because I'm going through too much pain not to have no medicine or somebody to give me x-rays and find out what's causing the pain and the crippling, you know. So, that's all I'm asking for. Is asking for the Court to judge

me, or the doctor to give me something to take away the pain.

*Id.* at 106–07. The court then gave Griffin an opportunity to consult with his attorney, after which Griffin (against his attorney's advice) withdrew his notice and motion. Despite an objection by Griffin's counsel, the court found that Griffin had "intelligently, knowingly, and voluntarily" withdrawn his "plea and notice as to mental disease or defect, and that in accordance with" section 41–601 of the Arkansas Statutes, he was "fit to proceed." *Id.* at 109. (Section 41–601 is now codified at Ark.Code Ann. § 5–2–312 (1987)).

At a pretrial hearing on September 2, 1987, the day of trial, Griffin's attorney again raised the subject of Griffin's mental fitness. Griffin's attorney stated that although he was prepared to go to trial that day he continued to object to the court's ruling permitting Griffin to withdraw his motion. The following exchange then occurred between the trial judge and Griffin:

> THE COURT: Do you understand what your attorney is saying, Mr. Griffin?
>
> DEFENDANT GRIFFIN: Yeah. He felt that I should take the treatment.
>
> THE COURT: Sir?
>
> DEFENDANT GRIFFIN: He felt that I should take the treatment.
>
> THE COURT: It is your desire not to? Is that what you're saying?
>
> DEFENDANT GRIFFIN: Yes, sir. I just—I'm wounded and have a few stiff parts on my body, that's all.
>
> THE COURT: You have been able to cooperate with Mr. Becker [Griffin's attorney] in your defense?
>
> DEFENDANT GRIFFIN: Yes, sir.
>
> THE COURT: Discussed the case with him, what witnesses might be called against you, what defenses you might have?
>
> DEFENDANT GRIFFIN: (Affirmative nod).

*Id.* at 117. Shortly after this exchange, the court permitted the trial to proceed. Griffin was found guilty by a jury and sentenced by the court to ten years in prison.

The Arkansas Court of Appeals affirmed Griffin's conviction on direct appeal. *Griffin v. State*, 25 Ark.App. 186, 755 S.W.2d 574 (1988). Griffin filed a petition in federal court seeking habeas relief pursuant to section 2254. The district court, against the recommendation of the magistrate, dismissed Griffin's petition. The sole issue before us is whether the state trial court complied with due process requirements in permitting Griffin to withdraw his notice and motion regarding competency, without an evidentiary hearing.

## II. DISCUSSION

Two underlying constitutional principles govern this case. First, the conviction of a mentally incompetent accused is a violation of due process.[1] *See Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Wright v. State of Minnesota*, 833 F.2d 746, 748 (8th Cir.1987), *cert. denied*, 485 U.S. 1011, 108 S.Ct. 1481, 99 L.Ed.2d 709 (1988). Second, due process requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial.[2] *See Drope*, 420 U.S. at 180, 95 S.Ct. at 908; *Pate*, 383 U.S. at 378, 86 S.Ct. at 838; *Collins v. Housewright*, 664 F.2d 181, 183 (8th Cir.1981). The latter principle operates as a safeguard to ensure that the former principle is not violated. *Collins*, 664 F.2d at 183.

If there is a sufficient doubt about the mental competency of an accused, a trial court has a responsibility to order a hearing *sua sponte*. *See Drope*, 420 U.S. at

---

1. The test for determining if an accused is mentally competent is " 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him.' " *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

2. No single, formulaic phrase has been set down by the Supreme Court to describe the quantum of doubt that compels an evidentiary hearing. Nor has any single, descriptive phrase emerged from the cases in other federal courts. Some cases in our circuit state that a "bona fide doubt" must exist. *See, e.g., Collins v. Housewright*, 664 F.2d 181, 183 (8th Cir.1981), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1639, 71 L.Ed.2d 872 (1982). Other cases use the phrase "reasonable doubt." *See, e.g., Speedy v. Wyrick*, 748 F.2d 481, 484 (8th Cir.1984), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2028, 85 L.Ed.2d 308 (1985). And still other cases use both phrases or some other phrase entirely. *See, e.g., United States v. Dworshak*, 514 F.2d 716, 718 (8th Cir.1975) (evidence must be sufficient to raise a "bona fide or reasonable doubt"); *Crenshaw v. Wolff*, 504 F.2d 377, 378 (8th Cir.1974) (there must be "substantial evidence of incompetency"), *cert. denied*, 420 U.S. 966, 95 S.Ct. 1361, 43 L.Ed.2d 445 (1975). *See also* 3 M. Perlin, *Mental Disability Law, Civil and Criminal* § 14.04, at 216–17 (1989) (noting that courts have used "bona fide," "substantial," "clear and unequivocal," and "reasonable"). The distinctions between these phrases are not trivial; some phrases suggest a much stricter constitutional standard than others.

A few of these phrases, for one reason or another, seem unacceptable to us. "Substantial evidence of doubt," for example, has never been used by the Supreme Court in the present context. And "bona fide doubt" appears to be a faulty construction of words. The locution came from the Illinois statute under consideration in *Pate* and, unfortunately, it has reached a level of being standard legal idiom in mental competency cases. "Bona fide" has many applications in the law (e.g., bona fide purchaser, bona fide occupational qualification). *See Black's Law Dictionary* 177 (6th ed. 1990); *see also* B. Garner, *A Dictionary of Modern Legal Usage* 90–91 (1987). In each application it is generally used according to its dictionary definition—that is, meaning "[a]cting or done in good faith; sincere, genuine." *Oxford English Dictionary* (2d ed. 1989). For purposes of determining whether an evidentiary hearing should be held, however, "bona fide doubt," is a misnomer. It does not convey the correct sense of the test: the question whether an evidentiary hearing is required does not depend on the sincerity, genuineness, etc. of the judge's doubt—we can assume any judge's doubt has these qualities.

We believe that the best terms in which to couch the constitutional test are "sufficient doubt." We acknowledge that the clarity or precision of this phrase has no clear advantage over some of the others. But sufficient doubt seems to be the phrase used most often by the Supreme Court. *See, e.g., Ford v. Wainwright*, 477 U.S. 399, 417, 106 S.Ct. 2595, 2605, 91 L.Ed.2d 335 (1986) (paraphrasing *Pate* 's holding in terms of "sufficient doubt"); *Drope*, 420 U.S. at 180, 95 S.Ct. at 908 (stating holding in terms of "sufficient doubt"). Sufficient doubt, by itself, of course, conveys very little meaning. But, like other expressions in the law, it receives meaning and vitality through the cases interpreting and applying it.

181, 95 S.Ct. at 908; *Pate,* 383 U.S. at 385, 86 S.Ct. at 842. "Failure to provide an adequate hearing on competency ... deprives a defendant of his due process right to a fair trial." *Beans v. Black,* 757 F.2d 933, 935 (8th Cir.), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985). The exact nature and amount of evidence necessary to establish a sufficient doubt is uncertain—"no fixed or immutable signs ... invariably indicate the need" for a hearing. *Drope,* 420 U.S. at 180, 95 S.Ct. at 908. According to the Supreme Court, factors to consider include: (1) evidence of irrational behavior by the accused, (2) the demeanor of the accused at trial, and (3) any prior medical opinion on the mental competency of the accused to stand trial. *Id.* at 180, 95 S.Ct. at 908. Any one of these factors alone can, "in some circumstances, be sufficient." *Id.* In addition, the Supreme Court has stated that an express doubt by the attorney for the accused is a legitimate factor to consider, but alone is not enough to create a sufficient doubt. *Id.* at 177 n. 13, 95 S.Ct. at 906 n. 13; *see also Collins,* 664 F.2d at 184.

■ In a habeas lawsuit, we generally presume that a state court's factual finding of competency is correct. *See Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983) (per curiam). But that presumption of correctness does not apply if the accused "did not receive a full, fair, and adequate hearing" or "was otherwise denied due process of law in the State court proceeding." 28 U.S.C. § 2254(d)(6), (7) (1988); *see Beans,* 757 F.2d at 935. A habeas petitioner, however, has " 'the burden of proving that objective

facts known to the trial court' " raised a sufficient doubt. *Collins,* 664 F.2d at 183 (quoting *Reese v. Wainwright,* 600 F.2d 1085, 1090–91 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979)). In our review then we ask ourselves " 'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.' " *Id.* (quoting *DeKaplany v. Enomoto,* 540 F.2d 975, 983 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977)).[3]

■ In Griffin's case, the most significant factor bearing on the question of his competency to stand trial was the letter from the director of the mental health center. Exactly what effect a letter of this type should have is not certain: there are no cases in our circuit involving similar incomplete and inconclusive evidence and the Supreme Court cases of *Pate* and *Drope* do not establish the minimum requirements for sufficient doubt. Our circuit cases, however, reveal that a medical opinion on the mental competency of an accused is usually persuasive evidence on the question of whether a sufficient doubt exists. *See, e.g., Harkins v. Wyrick,* 552 F.2d 1308, 1311 (8th Cir.1977) (in nearly every case in this circuit, where the denial of a competency hearing was upheld "there was some form of psychiatric evidence available to the trial court indicating the absence of mental illness"). In Griffin's case, three doctors, in a collective opinion, were unable to arrive at a consensus on whether Griffin was competent—indeed,

---

**3.** With these basic principles in mind, we should briefly review the widely varying decisions of the other courts in this case. The Arkansas Court of Appeals, in its affirmance of Griffin's conviction, held that, although a "bona fide doubt" as to Griffin's competency "may" have existed prior to trial, Griffin's argument along this line was "misplaced" because the trial court conducted a hearing that complied with the requirements of procedural due process. *Griffin v. State,* 25 Ark.App. 186, 755 S.W.2d 574, 576 (1988). The federal magistrate, on review of Griffin's section 2254 petition, recommended that the district court grant the petition on the basis that Griffin did not receive a full and fair

hearing on the question of his competency and that there was no factual support in the record for the state court's finding that Griffin was competent. *Griffin v. Lockhart,* No. PB–C–88–651, Proposed Findings and Recommendations at 5–6 (Aug. 1, 1989). The district court, however, decided not to follow the recommendations of the magistrate and ruled that the habeas petition should be dismissed. The district court determined that no sufficient doubt about Griffin's competency existed and that the record fairly supported the state court's conclusion that Griffin was competent. *Griffin v. Lockhart,* No. PB–C–88–651, Order at 2–3 (E.D.Ark. Sept. 12, 1989).

they recommended further evaluation. We conclude from this that a sufficient doubt was raised about Griffin's competency for trial.

Our conclusion is further supported by the insistence of Griffin's attorney, from the start of the criminal case, that Griffin required a more thorough examination than the regional mental health center could provide. Griffin's attorney was particularly concerned about the mental effects of the "serious head injuries" Griffin suffered at the time of his arrest. *See, e.g.,* Trial Transcript and Documents vol. I, at 102. Furthermore, although a trial court is better able than we are to judge the demeanor of an accused, the transcript reveals statements by Griffin that contribute to a doubt about his competency (e.g., addiction to medication, depression, threatened suicide). *See, e.g.,* Trial Transcript and Documents vol. I, at 104–07. In addition, although Griffin's decision to withdraw his motion and notice (against his attorney's advice) presented a slight twist to the usual events before a trial court, it did not remove the doubt about Griffin's competency. If Griffin was incompetent at the time, his decision may not have been knowingly and intelligently made. *Cf. Pate,* 383 U.S. at 384, 86 S.Ct. at 841.

The state suggests that Griffin's only concern (and his attorney's) was "physical pain rather than mental disorder." Brief for Appellee at 4. Several facts belie this assertion (e.g., Griffin's motion to the court was for a *mental* evaluation, not a *physical* evaluation). But, more importantly, Griffin's concern about his physical well-being does not preclude the possibility that he was also mentally incompetent. In addition, the state argues that Griffin appeared rational and competent before and during trial. This is irrelevant, for once a doubt about the competency of an accused exists, later behavior " 'cannot be relied upon to dispense with a hearing.' " *Rand v. Swenson,* 501 F.2d 394, 395 (8th Cir.1974) (quoting *Jones v. Swenson,* 469 F.2d 535 (8th Cir.1972), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2756, 37 L.Ed.2d 156 (1973)); *see also Pate,* 383 U.S. at 386, 86 S.Ct. at 842 ("While [a defendant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue.").

Because we hold that a sufficient doubt about Griffin's competency existed, we also must determine whether the state trial court conducted a full, fair, and adequate hearing on the subject of Griffin's competency. The full extent of the state trial court's inquiry into Griffin's competency is quoted nearly completely in the background above. No witnesses were called; the only medical report on Griffin was the one paragraph letter from the mental health center; apparently no attempt was made to obtain a more complete report from the mental health center; and the trial court's questioning of Griffin was very limited. It is likely, in fact, that the state trial court did not even believe it was conducting a hearing, since it approved Griffin's request to withdraw his notice and motion putting in issue his competency. Although the Arkansas Court of Appeals held that Griffin's "hearing" complied with due process, we conclude that it did not.

█ Having found that due process was violated by the state court's failure to provide an adequate hearing, we must determine the proper remedy. According to the Supreme Court, an attempt to retrospectively determine the mental competency of an accused by means of a nunc pro tunc hearing, even "under the most favorable circumstances," is hampered by "inherent difficulties." *Drope,* 420 U.S. at 183, 95 S.Ct. at 909; *see also Pate,* 383 U.S. at 387, 86 S.Ct. at 843. This is true even if the hearing is conducted a year or so after the trial. *Dusky v. United States,* 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). In Griffin's case, over three years have passed since his trial and it seems impossible to now conduct a meaningful nunc pro tunc hearing. Accordingly, we direct that the writ of habeas corpus be issued and that Griffin be discharged unless the state of Arkansas gives him a new trial within 120 days after the completion of any procedures necessary to accord Griffin his constitutional rights.

## III. CONCLUSION

Accordingly, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.