**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alvin Reed LONG CROW, Defendant–Appellant.**

No. 93–3509.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1994.

Decided Oct. 13, 1994.

1320

Clifford Barnard, Boulder, CO, argued, for appellant.

Dennis Holmes, Asst. U.S. Atty., Pierre, SD, argued, for appellee.

Before LOKEN, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Alvin Reed Long Crow appeals the district court's [1] judgment of conviction on charges of assault resulting in serious bodily injury, use of a firearm during a crime of violence, and first-degree burglary, in violation of 18 U.S.C. §§ 113(f), 924(c), and 1153. Long Crow contends that the district court erred by refusing to instruct the jury on the defense of insanity, by denying his request for appointment of new counsel, and by failing to conduct a hearing to determine his competency to stand trial. We affirm.

I.

The testimony at trial shows that after attending a birthday party for his son on November 7, 1992, Long Crow and about seven other adults gathered at the Travis Comes Flying residence where they consumed large amounts of alcohol. Long Crow drank eight or more beers along with other liquor. (Trial Tr. at 378.) Later in the evening, Long Crow and Al Drapeau began to argue. Gary Ross intervened and punched Long Crow in the eye, causing a cut that began to bleed. Long Crow then went home and got a metal baseball bat. He told his daughter that he had been "jumped" by "Gary and Al" and that he wanted to fight them "one-on-one." (Trial Tr. at 283–84.) Long Crow then found his son at another house. He repeated what he had told his daughter and asked his son for his son's rifle. (Id. at 332, 329–30.) His son gave him the rifle and watched him load it. (Id. at 330–31.) Long Crow said that he was going back to scare Al and Gary. (Id. at 329–30.)

Long Crow returned to the Comes Flying home in possession of the loaded .22 caliber rifle. He knocked on the front door and started shooting after Gary Ross opened and quickly closed the door. Long Crow then went around the house, shooting into the windows. He kicked in the side door and

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

entered the house still shooting until he ran out of ammunition. Travis Comes Flying wrestled the gun away from Long Crow, and others restrained Long Crow until the police arrived. As a result of the shooting spree, four persons were injured, including Gary Ross whose injuries were serious.

At the hospital the following morning, Long Crow signed a waiver of his rights and recounted details of the entire evening, including the shooting incident, to Special Agent Paul Pritchard of the Federal Bureau of Investigation. Long Crow told Agent Pritchard that he was mad about being struck by Ross and that "[i]f I had more shells, I probably would have killed somebody." (Id. at 486.) Agent Pritchard found Long Crow to be sober, alert, and cooperative. Long Crow agreed to a second interview later in the day, after which he signed a written statement detailing the events leading up to and including the shootings, including the fact that he had loaded the rifle with 13 rounds of ammunition. (See Appellee's Addend. at 1–5.)

A five-count indictment charged Long Crow with (I) assaulting Gary Ross with a dangerous weapon with intent to do bodily harm, see 18 U.S.C. § 1153, 113(c); (II) assault resulting in serious bodily injury to Gary Ross, see 18 U.S.C. § 1153, 113(f); (III) assaulting Al Drapeau with a dangerous weapon with intent to do bodily harm, see 18 U.S.C. § 1153, 113(c); (IV) first-degree burglary, see 18 U.S.C. § 1153, S.D.Codified Laws Ann. § 22–32–1 (Michie Supp.1994); and (V) using a firearm during a crime of violence; see 18 U.S.C. § 924(c). Long Crow gave notice of an insanity defense. At the request of both Long Crow and the government, the district court[2] ordered a psychiatric evaluation of Long Crow to determine whether he was insane at the time of the alleged offense and whether he was presently competent to stand trial. See 18 U.S.C. §§ 4241, 4242. William T. Bickart, Ph.D., a licensed clinical psychologist, evaluated Long Crow at the Federal Correctional Institution at Milan, Michigan, and he filed his report

with the court on March 9, 1993. Dr. Bickart diagnosed Long Crow with mild severity Post Traumatic Stress Disorder (PTSD), episodic alcohol abuse, mixed personality disorder, and headaches "probably due to tension." (Supp.App. at 5.) Dr. Bickart concluded that Long Crow was competent to stand trial and that he was not insane at the time of the offense. (Id. at 5–7.)

On May 26 and June 9, 1993, a little over a month before trial, Long Crow submitted two letters to the court seeking to have new counsel appointed to represent him. The district court, Judge Battey presiding, held a hearing after which he denied the request for new counsel. The district court found that although there was "not a meaningful relationship" between Long Crow and counsel, there was "not a justifiable reason for dissatisfaction" with his counsel. (App., Tab F at 23.) Thus, the district court denied the request for substitute counsel.

At trial, Long Crow testified that he "blacked out" after he fired the first shot and remembered nothing more until he was wrestling with Travis Comes Flying. (Trial Tr. at 379, 383–84.) Long Crow also offered the testimony of Frank Dame, Ph.D., a licensed clinical psychologist. Dr. Dame did not clinically examine Long Crow but testified solely on the basis of his general expertise and his observations of Long Crow at trial. Dr. Dame testified that he would consider a diagnosis of PTSD if he were treating Long Crow and that Long Crow appeared to have been suffering a PTSD episode at the time of the offense. (Id. at 447.) Long Crow requested an insanity instruction based upon this evidence. The district court refused to submit the insanity defense to the jury and instead instructed the jury that the PTSD evidence could be considered on the issue of specific intent for counts I, III, and IV.

The jury returned guilty verdicts on counts II, IV, and V, and acquitted Long Crow on counts I and III. The district court sentenced Long Crow to ten years of imprisonment to be followed by three years of super-

---

2. The Honorable Donald J. Porter, Senior United States District Judge for the District of South Dakota.

vised release. Long Crow appeals his conviction.

## II.

Long Crow first argues that the district court erred by refusing to instruct the jury on the affirmative defense of insanity. He also contends that we should apply de novo review to determine whether the district court committed error.

██ "[T]his Court has long held that 'a defendant is entitled to an instruction on his theory of the case if there is evidence to support it and a proper request has been entered.'" *United States v. Bartlett*, 856 F.2d 1071, 1082 (8th Cir.1988) (quoting *United States v. Brown*, 540 F.2d 364, 380 (8th Cir.1976)). We generally review the district court's refusal to give the defendant's requested jury instructions only for an abuse of discretion. *United States v. House*, 939 F.2d 659, 663 (8th Cir.1991). A question of law, however, is entitled to de novo review, and we conclude that whether there is sufficient evidence to submit an affirmative defense of insanity to the jury is a question of law for the court. *See United States v. Denny–Shaffer*, 2 F.3d 999, 1015 & n. 16, 1016 (10th Cir.1993). Therefore, de novo review is appropriate.

██ Insanity is an affirmative defense to a federal charge. 18 U.S.C. § 17. To establish an insanity defense, the defendant must prove "(1) that he was suffering from a severe mental disease or defect at the time [of] the charged offenses and (2) that his disease or defect rendered him unable to appreciate the nature and quality or the wrongfulness of his acts." *United States v. Hiebert*, 30 F.3d 1005, 1007 (8th Cir.1994) (to be reported at 30 F.3d 1005); 18 U.S.C. § 17(a). Generally, "the evidence to support a theory of defense need not be overwhelming; a defendant is entitled to an instruction on a theory of defense even though the evidentiary basis for that theory is 'weak, inconsistent, or of doubtful credibility.'" *Closs v. Leapley*, 18 F.3d 574, 580 (8th Cir.1994) (quoting *United States v. Casperson*, 773 F.2d 216, 223 n. 12 (8th Cir.1985)). Under 18 U.S.C. § 17(b), however, the defendant bears the burden of proof to establish the insanity defense "by clear and convincing evidence." *See United States v. Byrd*, 834 F.2d 145, 146 (8th Cir.1987) (quoting 18 U.S.C. § 17(b)).

██ We believe that this statutorily imposed higher burden of proof calls for a correlating higher standard for determining the quantum of evidence necessary to entitle a defendant to such an instruction. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1986) ("a higher burden of proof should have a corresponding effect on the judge when deciding to send the case to the jury"). The Ninth, Tenth, and Eleventh Circuits have adopted the following standard to define the quantum of evidence necessary to obtain an insanity instruction:

> [W]here the issue of insanity has otherwise been properly raised, a federal criminal defendant is due a jury instruction on insanity when the evidence would allow a reasonable jury to find that insanity has been shown with convincing clarity. Recalling the jury's right to determine credibility, to weigh the evidence, and to draw justifiable inferences of fact, the trial judge must construe the evidence most favorably to the defendant. The court also needs to remember that, although the "clear and convincing" standard is a fairly high one, "clear and convincing" does not call for the highest level of proof. If evidence would permit the jury to find to a high probability that defendant was insane, an insanity instruction is required.

*United States v. Owens*, 854 F.2d 432, 435–36 (11th Cir.1988) (footnotes omitted); *quoted in Denny–Shaffer*, 2 F.3d at 1015–16, and *United States v. Whitehead*, 896 F.2d 432, 435 (9th Cir.) ("We believe it would be ... nonsensical to expect a trial court to decide whether to submit instructions on a party's theory to the jury without reference to the standards the jury must employ."), *cert. denied*, 498 U.S. 938, 111 S.Ct. 342, 112 L.Ed.2d 306 (1990). The *Owens* standard correlates well with the higher standard of proof required by § 17(b). Also, by requiring the district court to construe the evidence in the light most favorable to the defendant, all of the credibility and fact-finding determi-

nations properly remain with the jury once the defendant places the defense in issue. *See Hiebert*, 30 F.3d at 1007 ("[w]hether a defendant has proven that he was legally insane is a factual question" for the jury). We therefore adopt the *Owens* standard as the proper test for determining whether a defendant is entitled to an insanity instruction.

■ Applying the *Owens* standard and considering the record de novo, we find that Long Crow was not entitled to an instruction on insanity. The only evidence supporting his defense was his own testimony that he "blacked out" after the first shot and the testimony of Dr. Dame. Dr. Dame, who never examined Long Crow for the purpose of diagnosis, indicated that Long Crow *appeared* to have suffered a PTSD episode during the commission of the crime. However, while Dr. Dame opined that "PTSD would be one of [his] first diagnostic considerations" if he were treating Long Crow, (Trial Tr. at 447), he clearly indicated that his observations at trial were not adequate for diagnosis. (*Id.* at 451.) The trial record contains no evidence of a clinical diagnosis of PTSD.[3]

Even if Dr. Dame's testimony could be construed as evidence that Long Crow suffered from PTSD, the record contains no evidence as to the severity of his defect. We have found no cases that treat PTSD as a severe mental defect amounting to insanity, and Long Crow has cited none. Although we do not reject the possibility that PTSD could be a severe mental disorder in certain instances, there is no evidence that Long Crow suffered a severe case. Absent any evidence of the severity of Long Crow's defect, assuming he suffers a defect, there is simply not sufficient evidence from which a jury could reasonably find that insanity has been shown with convincing clarity in this case. Accordingly, we hold that the district court did not err in refusing to instruct the jury on the insanity defense.

[3]. Dr. Bickart's report which diagnosed Long Crow with mild severity PTSD was not admitted at trial.

### III.

Long Crow next argues that the district court erred by refusing to grant his request for substitute counsel after he demonstrated that there was a complete breakdown of communications with his counsel, Mr. Arendt. We disagree.

■ We will reverse a district court's denial of a motion for substitute counsel only if the district court abused its discretion. *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992), and *cert. denied sub nom. Willis v. United States*, — U.S. —, 113 S.Ct. 1650, 123 L.Ed.2d 271 (1993). "Justifiable dissatisfaction sufficient to merit substitution of counsel includes a 'conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'" *Id.* (quoting *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991)).

■ The hearing on Long Crow's request for substitute counsel was held approximately one month before trial, and the trial date had been continued on two prior occasions. Long Crow's testimony at the hearing can, at best, be described as a rambling, vague monologue of complaints about his counsel. While Long Crow's comments indicated some distrust of counsel, he articulated no specific complaint that would justify his distrust, and the complaints he articulated were unrelated to his defense. Long Crow's counsel, Mr. Arendt, indicated that a complete breakdown in communications had occurred and that Long Crow's previous monologue "pretty much explains some of the problems that we're experiencing." (App., Tab F at 14.) However, Mr. Arendt also voiced some concern that the problem might be one which would only be repeated with new counsel, indicating that the problem was a result of Long Crow's own conduct. He also indicated a willingness to continue in his representation of Long Crow despite the difficulties he had encountered which caused him concern.

The district court found that the reasons advanced by Long Crow were not credible, that Mr. Arendt was providing Long Crow with a meaningful defense, and that there was no justifiable dissatisfaction with counsel to merit a substitution. The court found "de minimis problems of communication," (*id.* at 16), and that Mr. Arendt was "moving diligently towards the resolution of this matter," (*id.* at 24). We have carefully reviewed the record, and we find this to be a very close issue. Long Crow's request for substitute counsel was not a last-minute request which necessarily would have resulted in a continuance, and Mr. Arendt's opinion that there was a breakdown in communications is not to be lightly dismissed. However, the district court was in a better position to make credibility determinations as to Long Crow's statements and the true reason for any problems in communication, including Long Crow's reliance on "advice" from his jail house colleagues. *See Swinney*, 970 F.2d at 499 (court considered, among other factors, that difficulty with attorneys was because of the defendant's own conduct). Considering the totality of the circumstances and the quality of Mr. Arendt's representation, we cannot conclude that the district court abused its discretion by refusing to appoint substitute counsel.

## IV.

■ Long Crow's final argument is that he was denied due process of law when the district court failed to conduct sua sponte a hearing on his competency to stand trial. Long Crow made no request for a competency hearing. We must consider whether a reasonable judge situated in the position of the district court in this case "should have experienced doubt with respect to [the defendant's] competency to stand trial." *Griffin v. Lockhart*, 935 F.2d 926, 930 (8th Cir.1991) (internal quotations omitted).

■ A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960). A defendant has a due process right not to be convicted while incompetent and to have his competence determined in an evidentiary hearing. *Weisberg v. State of Minnesota*, 29 F.3d 1271, 1275–76 (8th Cir.1994); *see also Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). The district court is responsible to conduct an evidentiary hearing sua sponte if there is "sufficient doubt" about the defendant's competence. *United States v. Day*, 949 F.2d 973, 981 & n. 8 (8th Cir.1991). The district court is entitled to presume that a defendant is competent absent some contrary indication. *Id.* at 982. Factors that might give a contrary indication include, "(1) evidence of irrational behavior by the accused, (2) the demeanor of the accused at trial, and (3) any prior medical opinion on the mental competency of the accused to stand trial." *Griffin*, 935 F.2d at 930 (citing *Drope*, 420 U.S. at 180, 95 S.Ct. at 908). In order for Long Crow to mount a successful due process challenge, he must make "a showing that the trial judge failed to see the need for a competency hearing when, based on the facts and circumstances known to him at the time, he should have seen such a need." *Day*, 949 F.2d at 982.

■ The district court was aware that Long Crow's counsel was concerned about his competency and that a competency evaluation had previously been conducted. The report submitted by Dr. Bickart in March diagnosed Long Crow with mild severity PTSD, episodic alcohol abuse, personality disorder, and headaches, but Dr. Bickart concluded that Long Crow was competent to stand trial. (Supp.App. at 5.) "[A] medical opinion on the mental competency of an accused is usually persuasive evidence on the question of whether a sufficient doubt exists." *Griffin*, 935 F.2d at 930; *see also Lindhorst v. United States*, 658 F.2d 598, 607–08 (8th Cir.1981) (holding that no new trial was required where medical reports indicated the defendant was competent and there was no contemporary evidence in conflict with the medical finding of competency),

*cert. denied,* 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309 (1982).

Long Crow contends, however, that his demeanor in the substitution of counsel hearing and at trial should have given the district court new doubt as to his competency and the continuing validity of Dr. Bickart's opinion. Dr. Bickart's evaluation was submitted to the district court in March, approximately four months before trial. Long Crow's testimony at the substitution of counsel hearing one month before trial was, to a large extent, irrelevant rambling. At trial, although Long Crow occasionally rambled on in a monologue, most of his testimony was very coherent and articulate, indicating that he had a rational understanding of the proceedings against him. Additionally, there is no indication of the type of irrational or bizarre behavior that would normally indicate a competency problem.

We are firmly convinced that "a trial court is better able than we are to judge the demeanor of an accused." *Griffin,* 935 F.2d at 931. Given all the facts and circumstances before the district court, we cannot conclude that the district court acted unreasonably by failing to doubt Long Crow's competence to stand trial. Therefore, the district court did not violate Long Crow's right to due process by not holding a sua sponte hearing to determine his competency to stand trial.

### V.

Based upon the foregoing, we affirm the judgment of the district court.