# United States Court of Appeals
## For the First Circuit

No. 00-2110

RONALD JOHNSON,

Petitioner, Appellee,

v.

PAUL E. NORTON, SUPERINTENDENT,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Chief Judge,

Lipez, Circuit Judge,

and Stearns,* District Judge.

James J. Arguin, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, were on brief, for appellant.
Edward B. Gaffney, was on brief, for appellee.

---

* Of the District of Massachusetts, sitting by designation.

May 10, 2001

**TORRUELLA, <u>Chief Judge</u>.** Prior to his appearance on the first day of a criminal trial in Massachusetts state court, petitioner-appellee Ronald Johnson was struck on the head by a fellow inmate. The court denied Johnson's motion for a continuance and continued with jury selection. During a break in the proceedings, Johnson collapsed and the court suspended the trial so that Johnson could be treated. Johnson returned to trial on the second day and was convicted by a jury on the third. After exhausting his remedies in the state courts, Johnson filed a petition for a writ of habeas corpus in federal district court alleging that the trial court's failure to hold a competency hearing <u>sua</u> <u>sponte</u> after he became ill violated his Fourteenth Amendment right to due process. The district court granted the writ, holding that the state court's denial of Johnson's motion for a new trial on the same grounds was an unreasonable application of Supreme Court precedent and was based on an unreasonable determination of the facts. <u>Johnson</u> v. <u>Norton</u>, No. 99-11249 (D. Mass. July 7, 2000). This appeal followed. We affirm the decision of the district court.

## BACKGROUND

On May 1, 1996, the Commonwealth of Massachusetts issued a seven-count criminal complaint charging Johnson with assault and battery by means of a dangerous weapon, assault with a dangerous weapon and various firearms charges. Johnson's

-3-

trial was originally scheduled to commence on July 22, 1996, but he moved for a continuance to permit him to retain private counsel. After his motion was denied by the trial judge, Johnson filed an emergency petition for a continuance in the Supreme Judicial Court of Massachusetts. A Single Justice of that court denied the petition, and the case was called for trial the next day, July 23, 1996.

## A.  Trial

On the first day of trial, Johnson's counsel informed the court that Johnson desired to make a statement. Johnson then acknowledged, "Yes, I would like to represent myself. And I'm not ready for trial today. I got knocked out this morning coming up from Middleton. I was assaulted by another inmate and knocked out. I mean, I don't really know what's going on." The judge informed Johnson that the trial would continue, and proceeded to engage in a colloquy with Johnson regarding his motion to seek new counsel. The judge informed Johnson that he had already denied that motion the previous day, and moved on to Johnson's request to subpoena a witness and obtain a copy of the police report. Following this exchange, the judge entered into a discussion with Johnson's counsel concerning various matters, including the charge for possessing a handgun. Johnson participated in this discussion, asking the trial judge whether

the gun had been found and, when the judge revealed that it had not, how he could have been charged with the crime. The judge explained that the charge could be proven by witness statements, and Johnson raised no further objection.

The trial then moved to jury selection. After the jury was empaneled and sworn, the judge declared a recess. When the session resumed, the judge told counsel that the court officer had received a report from the nurse indicating that "the back of [Johnson's] head is blown up and that's she recommending [sic] that he be hospitalized." The nurse entered the courtroom and reported that Johnson "passed out twice and he's vomiting and he's a little shaky and he doesn't remember, he said he passed out this morning." She suggested that Johnson might have a concussion and should be "checked out."

The court suspended proceedings for the day, but continued to discuss with counsel matters relating to scheduling and witnesses. In the course of this discussion, the court was informed that two jurors might have known one of the victims. The judge asked defense counsel whether he would waive his client's presence during the discussion of this issue. Defense counsel responded that, "due to the fact that [Johnson had] taken ill," he would waive his client's presence. Following an unrecorded sidebar discussion, the judge informed the jury that

-5-

Johnson had "become ill" and that, as a result, the trial would be postponed until the next morning.

Johnson was present in the courtroom the following morning. Following a discussion of preliminary matters, defense counsel moved for a mistrial, stating that he had been talking to his client earlier and that "there [were] some serious questions here of his mental capacity to assist . . . himself in the conduct of this trial [and that] there's a question as to his competency and mental capacity." The judge denied the motion, stating that the court officer whom he had directed to call the nurse at the detention facility had already informed him that Johnson was "medically cleared" to appear in the courtroom. The trial proceeded for the remainder of the day. After the defense rested and the jury was dismissed, the judge made the following address to counsel:

> In light of the issue that was raised this morning, I'm now having witnessed the entire day's proceedings [sic], I just want to make some findings for the record, in light of the statement this morning that Mr. Johnson was not competent to continue with the trial today because of his injury. I just want to state for the record that Mr. Johnson has been extremely alert all day. He has been writing notes to his counsel. He has been extremely involved and focused on the trial. Raising questions, asking his Counsel both verbally and in writing to ask certain questions. Raising his hand on numerous occasions which I have no problem with. I commend him for doing it and I think he's

-6-

done an excellent job. But there's no question in my mind as a matter of fact that the Defendant has been quite able to assist his lawyer in conducting the trial here today and in fact on more than numerous occasions, directed his lawyer to ask certain questions, both in writing and verbally.

On the third day of trial, the jury returned a verdict against Johnson. Before sentencing, Johnson asked to address the court. In his remarks, Johnson alleged that he did not have a fair trial because two of the jurors may have known one of the victims. The judge responded that he had inquired into the matter and that both jurors had indicated that they would not be influenced by any prior knowledge. The court sentenced Johnson to two and a half years on the assault and battery with a dangerous weapons charge and two and a half years for the firearms charge, to be served consecutively. The court gave a suspended sentence of ten years for the assault by means of a dangerous weapons charge, and the remaining convictions were entered and placed on file.

## B. Motion for a New Trial

On March 19, 1997, Johnson, represented by new counsel, filed a motion for a new trial, alleging, inter alia, that trial counsel had improperly waived his right to be present at jury selection and that he "never agreed to let the trial continue after he was taken back [to the detention facility] after

-7-

vomiting and fainting on the day the jury was selected." Johnson further alleged that, since much of the jury selection process was conducted at sidebar while he remained at the defense table, he was "de facto" excluded from participating at all. Johnson submitted an affidavit in support of his motion, claiming that he was not content with the jury selected and that his trial counsel did not explain that he could keep certain persons off the jury. Johnson's trial counsel also submitted an affidavit, stating that Johnson had not been competent to assist in the jury selection process, and that Johnson's understanding of the jury selection process was "imperfect." The trial counsel added that "[d]uring that time, [he] was unable to communicate effectively with [Johnson]" and, as a result, Johnson "was unable to understand or participate, at all, in the jury selection process."

On May 13, 1997, the same judge who presided at trial held a hearing on Johnson's new trial motion. On the issue of Johnson's participation during jury selection, the judge stated that he "specifically" remembered seeing Johnson "confer with his lawyer . . . during the jury selection." Though it was not explicitly stated as a basis for the motion for a new trial, the issue of Johnson's competency arose from counsel's response to the judge's statement: he indicated that despite the judge's

observations, trial counsel had been unable to communicate with Johnson and that Johnson had passed out twice during the break following jury selection.

The trial judge denied Johnson's motion for a new trial based, inter alia, on the court's "specific recollection of discussions between defense counsel and [Johnson] concerning the composition of the jury during the selection process." Commonwealth v. Johnson, No. 9560-CR-1269 at 4 (Mass. Dist. Ct. June 19, 1997). The judge further noted that Johnson "was in the courtroom at all times during selection of the jury and counsel and did continuously engage in discussion with [his lawyer] during the process." Id. With regard to trial counsel's affidavit that Johnson was not competent to assist in jury selection, the judge held that the statement "was not really competent evidence as to [Johnson's ability] to assist [counsel] during the selection process." Id. at n.2. The judge went on to explain that:

> The Court was never informed that the [petitioner] was unable to understand or participate at all in the jury selection process, indeed, the conversations between defense counsel and the [petitioner] during jury selection stand in marked contrast to an affidavit that appeared after the hearing on the motion for a new trial.

Id. The judge concluded that Johnson "was deprived of no constitutional rights during the jury selection process." Id.

-9-

## C. The State Court Appeal

Johnson appealed his convictions as well as the denial of his motion for a new trial to the Massachusetts Appeals Court. In his appeal Johnson claimed that the trial judge erred when he failed to hold a competency hearing sua sponte after Johnson became ill on the first day of trial. The appeals court rejected this claim, concluding that "it was not error for the judge to proceed with trial" without holding a competency hearing after Johnson returned on the second day. Commonwealth v. Johnson, No. 97-P-1450 (Mass. App. Ct. May 5, 1998) (memorandum and order). The Supreme Judicial Court of Massachusetts denied Johnson's application for leave to obtain further appellate review. Commonwealth v. Johnson, 700 N.E.2d 268 (Mass. 1998). Johnson then filed a petition seeking a writ of habeas corpus.

## D. The Federal District Court Opinion

The district court granted Johnson's petition, concluding that despite the state court's determination that Johnson was competent to continue with trial on the second day, sufficient doubt existed as to Johnson's competency during jury selection to warrant a competency hearing. In particular, the court noted that at the start of the first day of trial, the state trial judge was aware that Johnson had suffered a head injury. Johnson, No. 99-11249 at 9. The state court was also

-10-

informed of Johnson's subsequent fainting and vomiting after he was taken to the holding cell. Id. Finally, the state court received the examining nurse's diagnosis of a possible concussion and the need for x-rays and further medical attention. Id. Taken together, "a substantial body of evidence on the first day of trial cast doubt on Johnson's ability to understand the proceedings against him." Id. (emphasis added).

The federal district court added that neither the nurse's report concerning Johnson's condition the following day nor the state court's sua sponte observations of Johnson's demeanor were adequate substitutes for an evidentiary hearing. Id. at 10.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) places new restrictions on a district court's power to grant writs of habeas corpus to state prisoners.[1] Under 28 U.S.C. § 2254(d)(1), a district court may issue the writ only where a state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

[1] Since Johnson's habeas petition was filed after the effective date of the AEDPA, the provisions of that Act apply to this appeal. Lindh v. Murphy, 521 U.S. 321, 336 (1997).

United States."[2]  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, ___; 120 S. Ct. 1495, 1523 (2000).  Under the "unreasonable application" clause, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  We review a federal district court's legal conclusions in a habeas proceeding de novo.  Simpson v. Matesanz, 175 F.3d 200, 205 (1st Cir. 1999).

It has long been held that the conviction of an accused person legally incompetent to stand trial violates due process.  Pate v. Robinson, 383 U.S. 375, 378 (1966).  The test for legal competence is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him."  Drope v. Missouri, 420 U.S. 162, 172 (1975).  The Massachusetts Appeals Court recognized that under Pate, "[i]n those

---

[2]  The district court may also issue the writ if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), a provision we do not address in this opinion.

situations where there exists doubt as to whether the defendant satisfies this test, the judge must, on his own initiative, conduct a full hearing on the issue." Johnson, No. 97-P-1450 at 4 (citations omitted). Since the state appeals court correctly identified the Supreme Court rule governing the case at bar, we must determine whether its decision constituted an "unreasonable application" of that rule.[3] Williams, 120 S. Ct. at 1521. Consequently, we must ask whether the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 1523.

Due process requires a court to hold a competency hearing sua sponte whenever evidence raises a sufficient doubt as to the competence of the accused.[4] Drope, 410 U.S. at 180; Pate, 383 U.S. at 385. "There

---

[3] AEDPA's alternative ground does not come into play here because the facts of this case are "materially distinguishable" from those in either of the governing Supreme Court precedents. See Drope, 420 U.S. at 180 (analyzing weight given to defendant's suicide attempt and irrational behavior); Pate, 383 U.S. at 385 (competency evaluated in light of defendant's previous confinement as a psychopath).

[4] No consistent phrase has been used to describe the precise quantum of doubt necessary to prompt a competency hearing. See, e.g., Griffin v. Lockhart, 935 F.2d 926, 929 n.2 (8th Cir. 1991) (reviewing various standards). The Supreme Court in Pate used the language of the Illinois statute under consideration, which required "bona fide" doubt. 383 U.S. at 385. However, the Court in Drope was careful to point out that this standard was not constitutionally mandated. 420 U.S. at 172-73. We agree with the Eighth Circuit that "bona fide" doubt is not entirely useful in practice: "[T]he question whether an evidentiary hearing is required does not depend on the sincerity, genuineness, etc. of the judge's doubt -- we can assume any judge's doubt has these qualities." Griffin, 935 F.2d at 929 n.2. It also seems unwise to simply employ the relevant state court standard, since doing so would result in varying degrees of strictness for an otherwise objective

-13-

are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." Drope, 410 U.S. at 180. Possible factors for the judge to consider are "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." Id.

The appeals court appears to have heeded this advice in its opinion. In particular, the court based its decision on the following factors. First, the judge relied on a report from the nurse that Johnson was "medically cleared" to attend the trial. Second, the trial

---

test. We thus follow the Eighth Circuit's approach and adopt a standard of "sufficient doubt," the phrase used to express the Court's holding in Drope, 420 U.S. at 180, and used in subsequent Supreme Court cases. See Griffin, 929 at n.2 (citing Ford v. Wainwright, 477 U.S. 399, 417 (1986)).

Although the appeals court applied the test of "substantial doubt" -- a standard never used by the Supreme Court -- it is not consequential here. First, to the extent that this point has not been firmly articulated by the Supreme Court, the general rule is still "clearly established." See O'Brien, 145 F.3d at 24 (noting that the term "clearly established . . . cut[s] a wider swath" under § 2254(d)(1) than in qualified immunity context). Second, it is not enough that the state court applied Supreme Court precedent erroneously or even incorrectly, "the application must also be unreasonable." Williams, 120 S. Ct. 1522. Here, it was reasonable for the appeals court to assume that state law governed the requirements for sua sponte competency hearings. See, e.g., Drope, 420 U.S. at 180 (evaluating Missouri statute protecting legally incompetent persons from standing trial). Moreover, since the error alleged in this case is the appeals court's failure to evaluate competency in the relevant time period, the precise standard of doubt used by the court is not at issue.

-14-

judge observed that "[t]here [was] no indication the defendant was acting in an impaired manner at the beginning of the second day." Johnson, No. 97-P-1450 at 5. Third, the appeals court opined that since the trial judge was able to observe Johnson's behavior at the pretrial hearing and during the trial, he "could have compared the defendant's demeanor and responses before and after the injury" and conclude therefrom that there was no competency issue. Id. The judge's findings on Johnson's behavior on the second day, the court believed, supported this rationale. Finally, the court noted that "[n]o evidence of impairment was offered in connection with the defendant's motion for a new trial."[5]  Id.

Although the court's reasoning may have been sound, it erred in one crucial respect: the ultimate question asked by the state court was whether the judge "err[ed] in proceeding without an evidentiary hearing [on competency]" on the second day of trial. Id. (emphasis added). Thus, though the court may have correctly determined that there was no doubt concerning Johnson's competence to continue with

---

[5] The trial judge also commented on this fact in dismissing the trial counsel's affidavit as tardy and "not competent." Johnson, No. 9560-CR-1269 at 4. Though this reason was not central to either court's decision, cf. Pate, 383 U.S. at 384 (addressing argument that counsel's failure to specifically request a hearing constituted a "waiver" on the issue of competency), it is irrelevant. Not only could a motion for a new trial based on incompetency be sufficient to raise the issue to the court, see id., but such a request is not germane to the present question, namely, whether the court was required to make the decision on its own.

trial after he collapsed, its decision did not address whether Johnson's injury raised sufficient doubt concerning his competency on the first day of trial, prior to his collapse. Indeed, neither the trial judge nor the appeals court squarely addressed how Johnson's collapse, and the nurse's subsequent opinion that the head trauma incurred by Johnson might possibly be a concussion requiring hospitalization, might have affected his ability to understand and participate in the jury selection proceedings immediately preceding those events.

According to appellants, this infirmity was cured through the colloquy which took place at the beginning of the first day of trial. Johnson's ability to ask questions regarding the nature of his case and the charges against him, they argue, demonstrates that he was fully able to understand the proceedings, and thus raised no doubt as to his competency on the first day. This reasoning misses the point. As the Supreme Court has clearly cautioned, "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." Drope, 420 U.S. at 181. There is no better illustration of this maxim than the instant case. Even if we accept that Johnson met the standard for competency at the start of the first day of trial, the undisputed

-16-

fact remains that a few hours later, he passed into unconsciousness.[6]

In the unlikely event that we would, in the absence of expert opinion, entertain the notion that Johnson's illness occurred instantaneously, i.e., that he was perfectly lucid until the exact moment he collapsed, such a possibility is belied by the record: the trial court told the jury that "[they] might have noticed that he was feeling ill in the courtroom." Thus, we know that at some point between the start of the trial and the end of jury selection, Johnson began to experience the symptoms which led to his passing out and, later, vomiting. At what point this deterioration began and to what degree it influenced his understanding of the proceedings, we cannot know.[7] Most importantly, the nurse's report provided objective medical evidence that Johnson may have been physically incapacitated during jury selection. In short, this was not, as in Pate and Drope, a question of a defendant's state of mind with respect to possible mental illness; it was a manifest medical condition which raised a sufficient doubt as to Johnson's competency during the jury selection process.

_____

[6] Although there is no allegation that Johnson dissembled his trauma, we note that the trial judge explicitly dismissed any such possibility, observing that there was "physical corroboration" of the injury.

[7] Johnson's only statement during this time was the following response to the clerk's instruction that he could exercise two peremptory challenges: "Can I have, can I have, my lawyer only write two of these (inaudible). Still hasn't write the rest of them. I don't know, I don't know the jurors," which we agree with the district court was not entirely responsive.

Our conclusion does not, as appellants contend, substitute our own factual determinations for those of the trial judge. It is true that the judge observed Johnson conferring with his lawyer throughout jury selection.[8] However, "while [this observation] might be relevant to the ultimate decision as to [competency], it cannot be relied upon to dispense with a hearing on that very issue." Pate, 383 U.S. at 385-86 (stating that factors favoring a finding of competency do not justify ignoring uncontroverted evidence to the contrary). In other words, a court's factual findings cannot cure sufficient doubt concerning competency in the absence of an evidentiary hearing.

For the reasons stated herein, we agree with the district court that the state court's decision constituted an unreasonable application of clearly established Supreme Court law and **affirm** the issuance of the writ.

---

[8] We do not analyze this factor separately, as did the district court, under § 2254(d)(2). First, the appeals court's decision on the merits of the competency claim was not "based" on this fact: indeed, it was not even considered since the court did not address the first day's proceedings in that part of its opinion. See Johnson, No. 97-P-1450, at 4-5. More saliently, because accepting the judge's observation as true would not cure the legal error, further review is unnecessary.