**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wallace Russell WHITEHEAD,
Defendant–Appellant.**

**No. 89–10210.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 1989.

Decided Feb. 22, 1990.

David G. Alvarez, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

W. Allen Stooks, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before HALL, BRUNETTI and NOONAN, Circuit Judges.

---

CYNTHIA HOLCOMB HALL, Circuit Judge:

Wallace Russell Whitehead appeals his jury conviction for bank robbery in violation of 18 U.S.C. § 2113(a). He claims that the district judge erred by refusing to submit jury instructions on the insanity defense. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I

On April 12, 1988, Whitehead entered a Tempe, Arizona Citibank branch. Stating that he wanted to cash a check, he handed the bank teller a note that read, "This is a holdup, give me your money and you won't get hurt." After the teller emptied the top drawer, Whitehead asked her to retrieve additional cash in the reserve drawer. While the teller bent down to unlock the drawer, Whitehead fled with $604. At no time during the robbery did Whitehead show the teller a gun or state that he had one.

On April 29, 1988, the Federal Bureau of Investigation ("FBI") held a press conference about the robbery and published a photograph of Whitehead taken from the bank's surveillance cameras. Whitehead's younger brother Bradley recognized the photograph and contacted the FBI. His sister Nancy also spoke with the FBI.

On May 25, 1988, a federal grand jury returned a four-count indictment against Whitehead for robbery of four metro-Phoenix banks. The government tried Whitehead on Count Three, concerning the April 12 Citibank holdup.

On July 14, 1988, Whitehead filed, pursuant to Federal Rule of Criminal Procedure 12.2(a), notice that he would assert an insanity defense and introduce expert testimony to that effect. On January 18, 1989, Whitehead submitted four instructions pertaining to the insanity defense under the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17 [hereinafter 1984 Act]. On the eve of trial, January 23, 1989, Whitehead resubmitted one of those instructions as a supplemental instruction.

Whitehead's sole defense was that he was legally insane at the time of the holdup. His key witness was Dr. Brian Yee, an Arizona psychologist experienced in treating patients with Post–Traumatic Stress Disorder ("PTSD").[1] Dr. Yee had diagnosed Whitehead with PTSD resulting from a traumatic experience in Vietnam.[2] After the experience, Yee testified, White experienced emotional detachment, recurring flashbacks and nightmares, and a growing pattern of drug usage.[3] Dr. Yee elaborated, "This is an individual who has mood instability, difficulty, severe difficulties in interpersonal relationships[;] who has difficulty with life orientation[ ] [and] values[;] [who] was prone to impulsivity[;] [and] who may be prone to suicidal thinking and possibly gestures."

Dr. Yee was confident Whitehead had PTSD at the time of the robbery. Asked whether the symptoms showed themselves on the day of the robbery he responded, "There may have been impulsivity. There may have been difficulty in judgment. There may have been concentration problems." He later added that PTSD "may very well have" manifested itself that day.

Dr. Yee was less confident of a connection between Whitehead's PTSD and the April 12 robbery. His testimony during cross-examination is illustrative:

Q: I am trying to reconcile [the statement that PTSD "may very well have" manifested itself April 12] with your earlier statement where I read you the quote where you said "Bank robbery is not a manifestation of post-traumatic

---

1. PTSD has been recognized as a "mental disorder." *See* American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 236–38 (3d ed. 1980) [hereinafter DSM–III].

2. According to Dr. Yee, the trigger event was a ground mission in which Whitehead inadvertently grenaded a hut filled with Vietnamese children. Upon returning to the village to conduct the obligatory "body count," Whitehead discovered the children's grisly remains. He later received a medal for heroism on that mission.

3. Dr. Yee acknowledged that prior to the incident, Whitehead occasionally used heroin and other drugs while in Vietnam.

stress disorder." Maybe we are having a semantics problem, I don't know....

A: I'm not making a connection between the two. I still—I still feel that that is an accurate statement. You can have PTSD and not rob a bank.

Q: You can have it and not rob a bank?

A: That's correct.

....

You can have two parallel conditions that may be impacting [sic] on an individual simultaneously, but there may not be any relationship between the two parallel conditions, or they may be independent but doesn't [sic] have to. That is, I don't see the two statements as being incompatible.

Transcript at 89. Upon further prodding, Dr. Yee twice stated that it would be "totally speculation" to opine *how* PTSD was manifesting itself on the day of the robbery.

The district judge decided there was insufficient evidence to instruct the jury on the insanity defense. He instructed the jury instead: "For reasons which need not concern you, the insanity defense has been withdrawn by the Court from your consideration. The evidence you received regarding the defendant's mental disorders and drug usage should not be considered by you in your deliberations on the charge in the Indictment."

The jury returned the guilty verdict which Whitehead now appeals.

## II

The Ninth Circuit has not resolved the issue of whether a district court's denial of a proposed jury instruction is reviewed de novo or for an abuse of discretion. *See United States v. Sotelo–Murillo*, 887 F.2d 176, 179 (9th Cir.1989) (citing conflicting cases); *United States v. Davis*, 876 F.2d 71, 72 (9th Cir.) (same), *cert. denied*, —— U.S. ——, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989).

If this case turned upon the applicable standard of review, then en banc consideration would be appropriate. *See* Fed.R. App.P. 35(a)(1); *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir.1987) (en banc). However this is not such a case. For even applying a de novo standard, we find that the district court did not err in refusing to present Whitehead's theory to the jury.

## III

■ This circuit has not defined the quantum of evidence necessary for a jury instruction on the insanity defense under the 1984 Act.[4] Whitehead would have us apply the general rule in this circuit that

a criminal defendant is entitled to a jury instruction on any defense which provides a legal defense to the charge against him and has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility. Where a defendant's requested instruction is supported by some evidence, a trial court's failure to give it is reversible error.

*Sotelo–Murillo*, 887 F.2d at 178 (quotation and citations omitted) (applying rule to defense of entrapment); *see, e.g., United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir.) (defense of mistaken identity), *cert. denied*, —— U.S. ——, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988); *United States v. Ibarra–Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987) (defense of reliance on advice of counsel); *United States v. Winn*, 577 F.2d 86, 90 (9th Cir.1978) (diminished capacity defense before 1984 Act).

The Eleventh Circuit recently rejected the application of such a standard to the

---

4. Section 17, originally codified under 18 U.S.C. § 20 but renumbered in 1986, *see* Act of Nov. 10, 1986, Pub.L. No. 99–646 § 34(a), 100 Stat. 3599, provides:

**§ 17. Insanity Defense**

(a) **Affirmative defense.**—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) **Burden of proof.**—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

modern insanity defense in *United States v. Owens*, 854 F.2d 432, 435 (11th Cir.1988). Owens, on trial for illegal possession of a firearm, claimed insanity. After both the defense and prosecution presented expert testimony on Owens' mental condition, the district court declined to instruct the jury on insanity.

On appeal, the Eleventh Circuit observed that its decisions prior to the 1984 Act allowed an insanity instruction if the defendant introduced only "slight evidence." *Id.* at 434 (quotation omitted). However, the court noted, the 1984 Act dramatically changed the insanity defense by (1) shifting the burden of proof to the defendant; and (2) raising the standard of proof to "clear and convincing evidence." *Id.* Seizing upon Supreme Court language that "a higher burden of proof should have a corresponding effect on the judge when deciding to send the case to the jury," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), the Eleventh Circuit held

> where the issue of insanity has otherwise been properly raised, a federal criminal defendant is due a jury instruction on insanity when the evidence would allow a reasonable jury to find that insanity has been shown with convincing clarity. Recalling the jury's right to determine credibility, to weigh the evidence, and to draw justifiable inferences of fact, the trial judge must construe the evidence most favorably to the defendant.

854 F.2d at 435 (footnote omitted).

We adopt this standard as a logical extension of *Anderson. Anderson* explored whether a judge's role in determining whether to grant summary judgment in a libel suit was affected by *New York Times Co. v. Sullivan*'s "clear and convincing" evidentiary standard for proof of actual malice. *See* 477 U.S. at 247, 106 S.Ct. at 2509. The Supreme Court noted that in deciding both motions for directed verdicts in civil trials and motions for acquittal in criminal trials, a court's decision necessarily implicates the standard of proof applicable to trial on the merits. 477 U.S. at 252, 106 S.Ct. at 2512. The Court found this principle equally applicable to motions for summary judgment. 477 U.S. at 254, 106 S.Ct. at 2513. It reasoned:

> Whether a jury could reasonably find for either party ... cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards.
>
> ....
>
> In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.

477 U.S. at 254–55, 106 S.Ct. at 2513–14. We believe it would be equally nonsensical to expect a trial court to decide whether to submit instructions on a party's theory to the jury without reference to the standards the jury must employ. *Cf. United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972) (directed verdict) ("Implicit in the [Supreme] Court's recognition of varying burdens of proof is a concomitant duty on the judge to consider the applicable burden when deciding whether to send the case to the jury.").

■ Applying the *Owens* standard to the case before us, and examining the record de novo, we hold that the district court did not err in refusing to instruct the jury on the insanity defense. Although Dr. Yee found it possible that some of Whitehead's symptoms were present that day, no reasonable fact finder could view his testimony as establishing with convincing clarity that he could not appreciate the nature or wrongfulness of the robbery.[5] Indeed, Dr.

---

5. Whitehead's argument that the district judge erroneously believed the 1984 Act contained a volitional component is meritless. After the defense rested, the judge privately told counsel:

Yee twice stated that such a conclusion would be "totally speculation." Whitehead's other witnesses offered no testimony as to his state of mind on the day of the robbery. Moreover, the bank teller's testimony contains no indication that Whitehead's behavior during the robbery was at all unusual (under the circumstances), much less the result of a "severe mental disease or defect." [6] Thus, we find no error.

## IV

For these reasons, the judgment of the district court is AFFIRMED.

I find no evidence in this case whatsoever from which the jury could find that the defendant's admitted acts of holding up the bank were the result of any severe mental disease or defect, or that as a result of any condition that he did have that *he was unable to appreciate the nature and quality or wrongfulness of his acts.*

Transcript at 136 (emphasis added). The judge further remarked that "the purpose of the 1984 Act was to do away with the volitional or non-volitional purposes [of the insanity defense]." *Id.*

6. We recognize that the terms "mental disease" and "mental defect" are no longer part of the scientific nomenclature. The scientific community instead relies exclusively on the concept of "mental disorder." *See* DSM–III at 5–6. That concept refers to

> a clinically significant behavioral or psychological syndrome or pattern that occurs in an individual and that is typically associated with either a painful symptom (distress) or impair-

ment in one or more important areas of functioning (disability). In addition, there is an inference that there is a behavioral, psychological or biological dysfunction, and that the disturbance is not only in the relationship between the individual and society. (When the disturbance is *limited* to a conflict between an individual and society, this may represent social deviance, which may or may not be commendable, but is not by itself a mental disorder.)

*Id.* at 6 (emphasis in original). Thus, the term "mental disorder" applies to conditions ranging from stuttering to mental retardation to catatonic schizophrenia. *See generally id.* at 15–17.

Significantly, the 1984 Act limits the insanity defense to those mental disorders that are "severe." The legislative history indicates that the severity requirement "was added to emphasize that non-psychotic behavior disorders or neuroses ... do not constitute the [insanity] defense." S.Rep. No. 98–225, 98th Cong. 2d Sess. 229, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3411.