**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5091

ALLAN L. GANT,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5178

ALLAN L. GANT,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, District Judge.
(CR-94-88)

Submitted: November 28, 1995

Decided: January 12, 1996

Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jeffrey M. Wakefield, FLAHERTY, SENSABAUGH & BONASSO,
Charleston, West Virginia, for Appellant. Rebecca A. Betts, United

States Attorney, John L. File, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Allan L. Gant was convicted by a jury of possession of Demerol (meperidine), 21 U.S.C.A. § 844(a) (West Supp. 1995) (Count One), for attempting to possess Percodan (oxycodone), 21 U.S.C.A. § 846 (West Supp. 1995) (Count Two), and for possession of Percodan (oxycodone), 21 U.S.C.A. § 843(a)(3) (West Supp. 1995) (Count Three). He appeals his convictions as well as the district court's denial of his motion for a new trial and his 15-month sentence. We affirm.

Testimony at Gant's trial established that Gant was an osteopathic physician employed at the Richwood Area Medical Center in Richwood, West Virginia. In 1990 he surrendered his Drug Enforcement Administration registration after he stole Demerol and Valium from the hospital. After that, Gant was not authorized to possess or dispense controlled substances. On Friday, January 14, 1994, Gant asked Dr. Inocencio Perez to prescribe Valium and Tylenol 4 for him. Perez wrote the prescriptions. Later the same day, Gant went to the Richwood emergency room with flu-like symptoms and Dr. Perez gave him injections of 6 milligrams of Decadron (a non-controlled substance) and 150 milligrams of Demerol, the maximum adult dose. Perez went home to Beckley, West Virginia, that evening, and did not work during the weekend.

On Saturday morning, January 15, Gant approached Elizabeth King, the nurse who had the keys to the hospital narcotics cabinet. He told her that the morphine supply needed for certain patients had run

2

out and instructed her to take some morphine from the narcotics cabinet to the floor where it was needed. King was reluctant to open the cabinet. She told Gant she preferred to wait until her replacement arrived because two signatures were needed when narcotics were removed from the cabinet. Gant insisted she do it immediately, and said he was authorized to provide the second signature.

When King opened the cabinet, Gant pushed her aside and took out the contents himself. There were three boxes of morphine and one box containing 75 milligrams of Demerol. Gant handed King a box of morphine. While King was signing it out, she saw Gant put a box in his pocket. After taking the morphine to the floor as instructed, King checked the narcotics cabinet and found the Demerol missing.

On Sunday, January 16, Gant called William Reynolds, the Rite-Aid pharmacist in town, and asked whether he had any Demerol in stock. Reynolds told him he had only generic Tylox and Percocet. About twenty minutes later, Gant came in with a prescription for Percodan. Gant told Reynolds he had caught Dr. Perez just before Perez left the hospital. Reynolds did not have Percodan in stock, but he called the Rite-Aid pharmacist in Craigsville, about twelve miles away, who did have it. Gant drove to Craigsville and had the prescription filled.

Later that afternoon, Reynolds became suspicious that the prescription might be a forgery because he had not filled any other prescriptions for Dr. Perez that weekend and because the prescription was for a larger number of tablets than Perez normally prescribed. Reynolds called the hospital and found that Perez was not working that weekend.

Gant worked Monday and Tuesday of the following week. Late on Wednesday, January 19, Gant called Dr. Thomas Cochran, another osteopathic physician at Richwood, and asked to be admitted to the hospital. Gant was admitted to the Richwood hospital with bacterial pneumonia and flu. On the 24th, he was transferred to Ridgeview Institute in Smyrna, Georgia, where he remained until April 1994 in a drug treatment program for doctors. In June 1994, Gant was charged with unlawful possession of Demerol, attempting to obtain Percodan by fraud, and obtaining Percodan by fraud.

3

Gant attempted to raise an insanity defense at trial. Dr. John Hutton, a psychiatrist, testified for the defense that in 1988 he had diagnosed Gant as suffering from delayed post-traumatic stress disorder resulting from his service in Vietnam as well as substance abuse and depression. Hutton had interviewed Gant in May 1994 on his return to West Virginia from the substance abuse program in Georgia, and his diagnosis then was the same. In September 1994, not long before the scheduled trial date, Hutton evaluated Gant at the request of defense counsel. In this report, he noted a history of delirium in January 1994.

Hutton testified at trial that the drugs prescribed and administered to Gant on Friday, January 14, combined with the flu and with his stress disorder and depression, created delirium in Gant. Hutton described delirium as a condition in which "the brain is acutely disturbed and overloaded and is unable to function in a reliable and predictable manner." At the same time, he said, a delirious person could have brief periods when he would appear normal to others. Hutton testified that he believed Gant was delirious when he was admitted to the hospital on Wednesday, January 19, and that "the symptoms would have preceded the actual admission by several days." Nurse Tanya Monte, who worked with Gant on the weekend, testified that he was agitated, talkative, irritable, and appeared ill. On Friday evening, she administered 150 milligrams of Demerol to him in the emergency room at Dr. Perez's direction, and questioned the amount. She said that on Saturday Gant was louder than usual and impatient, and his eyes were drowsy. While Gant was examining a patient, he said in the patient's hearing, "If this patient dies, I'm going to kill myself." Nurse Diane Dix testified that Gant alternated between being unusually quiet and being agitated and short-tempered. Nurse Elizabeth King, the government witness in whose presence Gant stole the Demerol from the hospital, testified that he was "out of character" on Saturday in that he did not make eye contact when speaking to her and had swollen hands.

After Gant finished his case, the government moved to strike the insanity defense, arguing that Gant had not presented clear and convincing evidence that, at the time of the offenses, he had a severe mental disease or defect that rendered him unable to appreciate the nature and quality or wrongfulness of his acts. See 18 U.S.C.A. § 17

4

(West Supp. 1995). Defense counsel relied on Hutton's testimony concerning Gant's supposed delirium during the weekend of January 14-16. The district court granted the motion to strike. The court found that delirium had not been mentioned in any of Gant's medical records concerning the weekend of the offenses except the report which Hutton prepared for defense counsel. The court also found that Gant had not presented clear and convincing evidence that he was delirious that weekend to the point that he could not appreciate the wrongfulness of his acts. Gant was convicted on all three counts. Following his conviction, Gant moved for a new trial but the district court denied the motion.

Under the Insanity Defense Reform Act of 1984, 18 U.S.C.A. § 17, a defendant who raises the affirmative defense of insanity has the burden of proving by clear and convincing evidence that, at the time of the offense, he was unable to appreciate the nature and quality or the wrongfulness of his acts because of a severe mental disease or defect. A defendant's evidence must be construed in the light most favorable to the him, United States v. Owens, 854 F.2d 432, 435 (11th Cir. 1988), but he is entitled to a jury instruction on insanity only if the evidence would permit the jury to find by a high degree of probability that he was insane. Id. at 436; accord United States v. Long Crow, 37 F.3d 1319, 1325 (8th Cir. 1994), cert. denied , 63 U.S.L.W. 3628 (U.S. Feb. 21, 1995) (No. 94-7654); United States v. Denny-Shaffer, 2 F.3d 999, 1015-16 (10th Cir. 1993); United States v. Whitehead, 896 F.2d 432, 435 (9th Cir.), cert. denied, 498 U.S. 938 (1990) (all adopting Owens standard). The district court's decision is reviewed de novo. Whitehead, 896 F.2d at 435.

Gant did not present clear and convincing evidence that he was suffering from a severe mental disease or defect during the weekend when he committed the offenses. He depended on Dr. Hutton's diagnosis of delirium made in September 1994 and on Dr. Cochran's testimony that he thought Gant might have been delirious when he was admitted to the hospital on January 19, 1994, even though Cochran had not mentioned delirium in his admission report.

The two nurses who testified for the defense did observe that Gant appeared ill and acted somewhat oddly during the weekend. But none of the witnesses who saw Dr. Gant at the hospital during the weekend

5

found him to be illogical, disorganized, or mentally incapacitated in any way. Moreover, neither of the two pharmacists who dealt with Gant on Sunday observed anything out of the ordinary in his behavior. Given the lack of evidence that Gant was delirious when he committed the offenses, the district court did not err in granting the government's motion to strike his insanity defense or in denying his motion for a new trial on that ground.

At sentencing, the district court found that a 2-level enhancement was warranted under United States Sentencing Commission, Guidelines Manual § 3B1.3 (Nov. 1994) with respect to Count One because Gant had abused a position of trust when he persuaded Nurse King to open the narcotics cabinet, thereby creating an opportunity for him to steal Demerol from the hospital's supply. Gant argued that the test is whether the defendant's position gives him the freedom to commit a difficult-to-detect wrong. United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992) (citing United States v. Hill, 915 F.2d 502, 505 (9th Cir. 1990)). He pointed out that his theft was easily detected. The district court rejected his argument, finding that the difficult-to-detect wrong test did not fit the facts of Gant's case. The court found that, as a doctor, Gant was in a position of trust with respect to the nurses who worked under his direction and that he abused this position when he instructed Nurse King to open the narcotics cabinet in his presence on the pretext that his patients needed additional morphine.

Whether the defendant held a position of trust and, if so, whether he abused it are questions of fact reviewed for clear error. Helton, 953 F.2d at 869. We find that the court's finding was not clearly erroneous. Even though Gant had surrendered his DEA registration for stealing drugs from the hospital, he still had authority to direct the nurses to open the narcotics cabinet and he could co-sign the sign-out sheet. Gant used his position to obtain access to the narcotics cabinet through Nurse King. Even though his theft of Demerol was easily detected, Gant clearly had a position of trust and betrayed it.

Finally, Gant claims that the district court erred in refusing to depart on the ground of diminished capacity. USSG § 5K2.13. The court's decision is not reviewable. United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990).

6

We therefore affirm the conviction and sentence. The district court's order denying a new trial is also affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

7