EMILIO M. GARZA, Circuit Judge,
dissenting:
Though the majority appears to rely upon our precedent in United States v. Dixon, 185 F.3d 393 (5th Cir.1999) to support its holding that a jury instruction on insanity should have been provided in this ease, the standards set out in Dixon and in 18 U.S.C. § 17 require that there be a link between the defendant’s mental illness and his criminal conduct — a link that is not present on the record here. Accordingly, I respectfully dissent.
18 U.S.C. § 17 is the cornerstone of the analysis of whether a jury instruction on insanity should issue. It reads:
(a) Affirmative defense. — It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
(b) Burden of proof. — The defendant has the burden of proving the defense of insanity by clear and convincing evidence. [Emphasis added]
Under § 17, a defendant must show the following: (1) that he had a severe mental disease or defect, (2) at the time of the commission of the acts, (3) as a result of which (4) he was unable to appreciate the nature and quality or the wrongfulness of those acts. Dixon states that a § 17 jury instruction should be submitted to the jury “when the evidence would allow a reasonable jury to find that insanity has been shown with convincing clarity.”[1] Dixon, 185 F.3d at 404. In other words, a jury instruction on the insanity defense is required if “the evidence would permit the jury to find to a high probability that defendant was insane.” Id. Though we construe the evidence in the light most favorable to the defendant, id., the defendant must still provide the requisite quantum of evidence in order to merit the insanity instruction.
*346 The majority opinion glosses over elements (2) and (3) in concluding that there was enough evidence to support a jury instruction on insanity in this case. The district court “may withhold the insanity instruction if it concludes that the relationship between a defendant’s mental illness history and his criminal conduct has not been explained or examined in any meaningful way.” Id. at 407. Here, because the psychosis that was part of his schizotypal personality disorder was episodic and intermittent in nature, Long has not demonstrated with “convincing clarity” that he was experiencing psychosis that would prevent him from distinguishing right from wrong at the time he committed the offense. The evidence thus does not establish a high probability of a causal link between his disease and an inability to appreciate the nature and quality or wrongfulness of his acts.
Dixon holds that there must be evidence to support the inference that the defendant was unable to appreciate his wrongdoing at the time he committed the criminal acts. In Dixon, the court stated that evidence of the defendant’s mental illness alone was not enough for him to meet the “convincing clarity” burden; rather, there must be sufficient evidence for a rational jury to make the connection between the illness and the conduct itself:
Obviously, this means that some kind of expert testimony is needed to explain the relationship between Dixon’s medical history and his criminal actions. Helpful testimony would describe the characteristics of his mental illnesses and the effect of such illnesses on his ability to appreciate wrongdoing. This type of testimony could assist a jury in resolving the “ultimate issue” in an insanity defense, and it is hard to imagine how the jury could adequately resolve these issues without such assistance. [Emphasis added].
Id. at 406. In Dixon, the Court found that the insanity instruction was warranted where there was testimony explaining how defendant’s mental illness could have manifested itself at the time he committed the offense, and how his illness might have acted to prevent him from recognizing the wrongfulness of his acts.[2] Id. at 407.
In the present case, Dr. Friedberg testified at trial that Long had a long-standing schizotypal type personality disorder characterized by a “general mentation” of irrational bizarre thinking with periods of episodic psychosis during which he lost contact with reality. Dr. Friedberg also testified that someone with schizotypal personality disorder is generally able to appreciate the nature and quality of his acts.[3] It is therefore central to our inqui *347 ry whether Long suffered episodes of psychosis at the time of his acts such that he was unable to appreciate their nature and quality or wrongfulness. Dr. Friedberg did not provide any evidence that Long suffered from such episodes during the commission of the offense, and in fact opined that Long’s actions in avoiding detection were generally indicative of the ability to distinguish right from wrong.[4] Long never described those voices or his hallucinations to Dr. Friedberg as part of a clinical evaluation, and the first appearance of this evidence is at trial during Long’s own testimony.[5]
The majority claims that between the diagnostic criteria of schizotypal personality disorder, the testimony of Dr. Fried-berg, Long’s mother and Long, there is “sufficiently clear and convincing evidence for a reasonable juror to be able to conclude that he suffered from a severe mental disease or defect at the time he committed his crimes.” However, the majority conflates the question of “severity” with the question of whether there is clear and convincing evidence that, at the time of the commission of the crimes, Long was experiencing the condition that prevented him from appreciating the nature and wrongfulness of his acts. Even assuming arguendo that Long’s disease meets § 17(a)’s severity requirement, a severe disease or defect must still be directly connected to the defendant’s lack of appreciation of the wrongfulness of his acts. As Long’s own expert testified, the *348 “general mentation” of schizotypal personality disorder alone would not prevent Long from appreciating the nature and quality or wrongfulness of his acts, nor would it necessarily lead to the loss of contact with reality. Nothing else in the record suggests otherwise.
The necessity of this causal link is illustrated by a similar case arising out of the Tenth Circuit, in which both state and government experts agreed that the defendant suffered from Multiple Personality Disorder (MPD), and the relevant question was whether or not the “dominant” or “host” personality was in control at the time the defendant committed the crime. See United States v. Denny-Shaffer, 2 F.3d 999 (10th Cir.1993). The Tenth Circuit concluded that the evidence was sufficient to support inferences by the fact-finder that the defendant suffered from a severe mental disease or defect (MPD); that her dominant or host personality was not in control so as to cause the commission of the offense and was not aware that an alternate personality was responsible for the defendant’s actions; and thus, that as a result of the severe mental disease or defect the host personality was unable to appreciate the nature and quality or wrongfulness of the conduct controlled by the alternate personality. Denny-Shaffer, 2 F.3d at 1016. The analogy with the instant case is clear.[6] The existence of the severe mental disease or defect (such as MPD, or schizotypal personality disorder) alone is not enough for the purposes of § 17(a); there must be sufficient evidence of a temporal and causal nexus between the symptoms of the disease and the commission of the acts themselves.[7] See also United States v. Whitehead, 896 F.2d 432, 433-36 (9th Cir.1990) (affirming district court’s denial of jury instruction where neither expert nor other witnesses could establish that defendant’s Post-Traumatic Stress Disorder manifested itself on day of robbery, such that defendant could not appreciate nature or wrongfulness of crime).
The majority’s disquisition on the judicial role in determining insanity misses the point that in this case, the “clear and convincing evidence” required to prove the elements of § 17(a) is simply absent. The only testimony in this case that tended to show that Long experienced delusions and hallucinations at the time of the commission of his acts was provided by Long himself. This alone, without expert testimony to aid the fact-finder in concluding that the symptoms Long described could have prevented him from appreciating the wrongfulness of his acts, does not support a finding that § 17(a) has been satisfied. See, e.g., United States v. Keen, 96 F.3d 425, 430-31 (9th Cir.1996) (upholding district court’s, decision to strike insanity defense where defendant sought to introduce only his own testimony and testimony of *349 family members without expert corroboration).
Finally, and on a closely related point, the majority incorrectly characterizes the role of the expert witness in clarifying the link between a defendant’s disease and whether the defendant appreciates the wrongfulness of his acts. While an expert witness may not offer opinion testimony as to whether the defendant had the “mental state or condition constituting an element of the crime charged or of a defense thereto,” Fed.R.Evtd. 704(b), the rules of evidence obviously do not prevent experts from providing the evidence necessary for the fact-finder to make the inferential leap between the symptoms experienced by the defendant at the time of the crime and the defendant’s appreciation of the wrongfulness of his acts. Such evidence, assisted by expert explication, Dixon, 185 F.3d at 406, is exactly what § 17(a) requires.[8]
I disagree with the majority that Long has met his burden under 18 U.S.C. § 17 of showing that a reasonable jury would believe with a high probability that he was insane at the time of his crimes. The district court did not err in refusing to issue the insanity instruction to the jury. Accordingly, I would affirm the judgment of conviction, and respectfully dissent.

. As the majority points out, the "convincing clarity" standard is no higher than the "clear and convincing” standard required for the defendant to prove the affirmative defense of insanity. See Dixon, 185 F.3d at 404.

. For example, the evidence showed that Dixon was off his medication for two days before he committed his criminal acts, and that soon after his detention he appeared "agitated, delusional, and hostile.” Dixon, 185 F.3d at 407. There was also testimony by the state’s psychiatric expert from which the jury could infer that Dixon was having delusions about the victim. Id.

. This is not to say that only a diagnosis of psychosis meets the elements of § 17(a). In this case, the defendant’s expert testified that Long's disease absent the psychotic episodes would not necessarily prevent Long from appreciating the nature of his crimes. Because the psychotic episodes described by Dr. Friedman provide the only link between the appreciation element of § 17(a) and Long's disease, I focus on whether Long suffered from these psychotic episodes. Thus, I agree with the majority that the "content of the diagnosis,” not merely its label, is at the heart of the analysis; here, there is little evidence (much less clear and convincing evidence) that a diagnosis of schizotypal personality disorder without psychotic episodes would lead to Long’s inability to appreciate the wrongfulness of his acts.

. For example, Long used self-adhesive envelopes, gloves and threw away the top and bottom copies of his letters in order to remove detection of fingerprints, purchased stamps at busy times and mailed the letters at various locations in order not to draw attention to himself.

. Moreover, this panel has not considered all the evidence that was before the district court. After oral argument, the Government filed with this Court an unopposed motion to supplement the record on appeal with a letter from the Warden at the Federal Medical Center and a mental health evaluation written by Dr. Jim Womack. At the pre-trial stage, the district judge ordered this evaluation as pertinent to the issues of Long’s competence to stand trial (which is not on appeal) and Long’s mental state at the time of the commission of the crimes. ROA 97-98. The motion to supplement was properly referred to Judge Wiener as a single judge matter. 5th Cir. R. 27.2.
The standard for granting a motion to supplement the record on appeal is that the Court “will not enlarge the record on appeal with evidence that was not before the District Court.” McIntosh v. Partridge, 540 F.3d 315, 327 (5th Cir.2008) (internal citations omitted). The Government averred in its motion that the letter and report were available to the district judge when he refused to give the insanity instruction. Significantly, Long’s counsel did not object to the supplementation of the record. Judge Wiener, in denying the Government’s motion, cited several evidentiary rationales — specifically, that the documents (1) had not been "identified, offered and received” at trial, (2) had not been authenticated (Fed.R.Evid. 901, 902) and (3) purportedly contained testimonial out-of-court statements in violation of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Supplementing the record on appeal does not implicate evidentiary issues which are properly matters for the district court, and those issues are not germane to whether an appellate court can properly consider the letter and the report as part of the record on appeal.
It is clear, however, that this Court would still have to address the implication of these documents on the district court’s decision not to issue the insanity instruction. The record clearly reflects that the district court ordered these documents to be prepared for purposes of considering the issue of competency and sanity, pursuant to Fed. R.Crim. P. 12.2(c). The record does not, however, indicate, nor have the parties addressed, whether and to what extent the court used these documents in making the legal decision on whether to submit an issue on insanity. That issue would require further briefing from the parties. At the very least, the motion to supplement should have been granted.

. Significantly, in Dixon, this Court cited to Denny-Shaffer and noted: "In reversing, the court of appeals [in that case] was careful to note that 'a factual showing or jury finding that a defendant suffers from MPD, without more, [does not] automatically satisfty] [§ 17's] requirements.' ... Instead, in finding an insanity instruction appropriate, the court of appeals explicitly relied on expert testimony establishing that (1) the defendant was suffering from MPD at the time of the crime and (2) the host personality was unaware of the criminal conduct.” Dixon, 185 F.3d at 406 (internal citations omitted).

. The majority mischaracterizes this position as requiring an expert to have examined the defendant during the commission of the crimes. Of course, this is an absurd result: what the "clear and convincing” standard does require, however, is expert testimony to establish that the symptoms Long described at trial are consistent with a “break from reality” sufficient to meet the appreciation element of § 17(a).

. In Denny-Shaffer, 2 F.3d at 1007-09, for example, expert testimony that the defendant's host personality was not in control at the time of the commission of the crime was necessary for the court's legal conclusion that the appreciation element of § 17(a) was satisfied. See also Whitehead, 896 F.2d at 435 (finding that although expert witness found it ''possible” that some of defendant's symptoms were present on day of crime, "no reasonable fact finder could view [expert’s] testimony as establishing with convincing clarity that [defendant] could not appreciate the nature or wrongfulness of the robbery.”)